**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE**

| | |
|---|---|
| TRINA SOLAR (VIETNAM) SCIENCE & TECHNOLOGY CO., LTD., ET AL., | ) )  ) ) |
| *Plaintiffs,* | ) ) |
| and, | )   Ct. No. 23-00228 |
| FLORIDA POWER & LIGHT COMPANY, | ) ) |
| *Plaintiff-Intervenor,* | ) ) |
| v. | ) ) |
| UNITED STATES | ) ) |
| *Defendant,* | ) ) |
| and, | ) ) |
| AUXIN SOLAR INC., ET ANO., | ) ) |
| *Defendant-Intervenors.* | ) ) |

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT
UPON THE AGENCY RECORD OF PLAINTIFFS TRINA SOLAR
(VIETNAM) SCIENCE & TECHNOLOGY CO., LTD., ET AL.**

Jonathan M. Freed
MacKensie R. Sugama
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE,
Suite 500
Washington, DC  20003
jfreed@tradepacificlaw.com

Dated: June 25, 2024                *Counsel to Plaintiffs*

# TABLE OF CONTENTS

I.    STATEMENT PURSUANT TO RULE 56.2(C) ................................. 1

  *A.    Administrative Determination Under Review* ........................... *1*

  *B.    Issues Presented* ................................................................. *2*

  i.    Whether Commerce's affirmative finding of circumvention in
        Vietnam is supported by substantial evidence when
        contrasted with Commerce's finding that the nature of
        production of crystalline silicon photovoltaic ("CSPV") cells
        and modules is significant and complex? ..................................... 2

  ii.   Whether Commerce's decision to apply its circumvention
        finding on a country wide basis was supported by substantial
        evidence and is otherwise in accordance with law? .................. 4

II.   Statement of Facts ................................................................ 5

  *A.    Solar Cells Orders* ............................................................... *5*

  *B.    Solar Products Orders* ......................................................... *8*

  *C.    Circumvention Inquiries* ...................................................... *9*

III.  STANDARD OF REVIEW .................................................... 16

IV.   ARGUMENT ....................................................................... 18

  *A.    Substantial Evidence Does Not Support a Conclusion that the
        Process of Assembly or Completion in Vietnam is Minor or
        Insignificant* ..................................................................... *18*

    1.    Legal Framework ............................................................ 19

    2.    Commerce's Analysis of the "Nature of Production Process"
          Compels a Negative Finding of Circumvention ....................... 21

    3.    Commerce's Failed to Explain Why Production in Vietnam
          Circumvents the Orders Despite the Fact that the Nature of
          Cell and Module Production Is Significant ............................ 26

  *B.    Commerce's Decision to Apply its Circumvention Finding on a
        Country-Wide Basis Is Not Supported by Substantial Evidence  29*

    1.    Legal Framework ............................................................ 30

**2.    Commerce's Country-Wide Affirmative Circumvention Determination Is Not in Accordance with Law or Supported by Substantial Evidence**.................................................... **33**

**V.    CONCLUSION**........................................................................ **40**

# TABLE OF AUTHORITIES

## Cases

*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951) .............17

*N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939) ........................................................................................................17

*Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) ....................................................................................17

*Daewoo Elecs. Co. v. Int'l Union of Elec., Tech., Salaried & Mach. Workers, AFL-CIO,*6 F.3d 1511, (Fed. Cir. 1993) ..................................17

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962), ........................................................................................................17

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983) ........................................................................17

*NMB Sing. Ltd.* v. *United States,* 557 F.3d 1316, 1319 (Fed. Cir. 2009) ........................................................................................................18

*Nucor Corporation v. United States*, 461 F. Supp. 3d 1374, 1380 (Ct. Int'l Trade 2020) ....................................................................................18

*Stein Industries Inc. v. United States*, 365 F. Supp. 3d 1364, 1371 (Ct. Int'l Trade 2019) ....................................................................................18

*Coalition of American Flange Producers v. United States*, 448 F.Supp.3d 1340, 1355 (Ct. Int'l Trade 2020) ........................................................27

*Catfish Farmers of America v. United States*, Not Reported in Fed.Supp., 2023 WL 4560815 (Ct. Int'l Trade 2023) ..........................30

*Papierfabrik August Koehler SE v. United States,* 843 F.3d 1373, 1380 (Fed. Cir. 2016) ....................................................................................31

*Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1339 (Fed. Cir. 2002). ...................................................................................31

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) ....................................................................................31

*Yantai Oriental Juice Co. v. United States*, 27 CIT 477 (2003).............31

*SKF USA Inc. v. United States*, 675 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ........................................................................................ 31

*Navneet Publ'ns (India) Ltd. v. United States*, 999 F. Supp. 2d 1354 (Ct. Int'l Trade 2014) ..................................................................... 31

*Amanda Foods (Vietnam) Ltd., v. United States*, 647 F. Supp. 2d 1368 (Ct. Int'l Trade 2009) ................................................................... 32

*Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1329-29 (Fed. Cir. 2020) ...................................................... 33

*Shelter Forest International Acquisition, Inc. v. United States*, 497 F.Supp.3d 1388, 1403 (Ct. Int'l Trade 2021) ......................... 37

## Statutes

19 U.S.C. § 1677j(b)(1) ........................................................... Passim

19 U.S.C. § 1677j(b)(2) ........................................................... Passim

19 U.S.C. § 1677e(b)(1) ........................................................... Passim

19 U.S.C. § 1677j(2) ................................................................ 12, 13

19 U.S.C. § 1677f(i)(3)(A) ............................................................ 18

19 U.S.C. § 1677e(a) ............................................................. 30, 32

## Administrative Determinations

Issues and Decision Memorandum for the Circumvention Inquiry With Respect to the Socialist Republic of Vietnam, (Dep't of Commerce Aug. 17, 2023) ......................................................................... Passim

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Aug. 23, 2023). ..................................................... Passim

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and*

*Vietnam*, 87 Fed. Reg. 75221 (Dec. 8, 2022) and accompanying preliminary decision memorandum (Dec. 1, 2022)......................3, 11

Memorandum from James Maeder to Lisa Wang, *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China,* Preliminary Decision Memorandum for the Circumvention Inquiry With Respect to the Kingdom of Thailand, Case No. A-570-979 (Circumvention Inquiry Thailand 2022) (Dec. 1, 2022)......................viii

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73018 (Dep't Commerce Dec. 7, 2012).....ix, 5

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73017 (Dep't Commerce Dec. 7, 2012)..............ix, 5

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China*: *Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 76970 (Dep't Commerce Dec. 23, 2014), and accompanying Issues and Decision Memo ....................................ix, 8, 9

Memorandum from Daniel Alexander to James Maeder, *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells from the People's Republic of China: Sunspark Technology Inc. Scope Ruling*, Case Nos. A-570-979, C-570-980 (Oct. 23, 2020)...........8

Commerce Memorandum, *Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells from the People's Republic of China: ET Solar Inc.* (A-570-979, C-570-980) (June 15, 2021) ................................................................8

U.S. Customs and Border Protection, Ruling H301813 (May 24, 2019), C.R. 97-105................................................................................8

U.S. Customs and Border Protection, Ruling H301201 (Oct. 18, 2019), C.R. 89................................................................................8

*Crystalline Silicon Photovoltaic Cells and Modules From China*, Inv. Nos. 701-TA-481 and 731-TA-1190, USITC Pub. 4360 (Nov. 2012) (Final)..8

*Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 Fed. Reg. 8592 (Feb. 18, 2015) ................................ix, 9

*Certain Crystalline Silicon Photovoltaic Products From Taiwan: Antidumping Duty Order*, 80 Fed. Reg. 8596 (Feb. 18, 2015) .............. 9

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders*, 87 Fed. Reg. 19071 (Apr. 1, 2022) ................................... 10

*Preliminary Negative Determination of Circumvention of the Antidumping Order on Polyethylene Terephthalate Film, Sheet, and Strip From the United Arab Emirates,* 80 Fed. Reg. 26,229 (May 7, 2015), and accompanying IDM ........................................................... 25

*Certain Uncoated Paper From the People's Republic of China: Affirmative Preliminary Determinations of Circumvention of the Antidumping and Countervailing Duty Orders for Uncoated Paper Rolls*, 85 Fed. Reg. 72624 (Nov. 13, 2020) and accompanying Preliminary Issues and Decision Memorandum (Nov. 6, 2020) ................................................. 34

*Certain Uncoated Paper From Brazil, the People's Republic of China, and Indonesia: Affirmative Final Determinations of Circumvention of the Antidumping Duty Orders and Countervailing Duty Orders for Certain Uncoated Paper Rolls*, 86 Fed. Reg. 71025 (Dec. 14, 2021) ................ 35

Memorandum to Robert Bolling, Acting Director AD/CVD Operations, Office IV, "*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China-Circumvention Inquiry with Respect to the Socialist Republic of Vietnam*: Respondent Selection," (May 12, 2022) ................................ 35

*Fine Denier Polyester Staple Fiber From the Republic of Korea: Final Affirmative Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 24743 (May 30, 2018) .................................................................... 36

*Fine Denier Polyester Staple Fiber From Taiwan: Final Affirmative Determination of Sales at Less Than Fair Value,* 83 Fed. Reg. 24745, 24756 (May 30, 2018) ........................................................................... 36

# GLOSSARY

| Abbreviations | Term |
|---|---|
| "minor or insignificant" factors | Statutory factors under 19 U.S.C. § 1677j(b)(2) |
| "Trina" or "Plaintiffs" | Trina Solar (Vietnam) Science & Technology Co., Ltd., Trina Solar Energy Development Company Limited, and Trina Solar Co., Ltd. |
| AD/CVD | Antidumping and Countervailing Duty |
| A-SMACC | American Solar Manufacturers Against Chinese Circumvention |
| Auxin | Auxin Solar Inc. |
| Auxin Circ. Req | Letter from Cassidy Levy Kent (USA) LLP to the U.S. Department of Commerce, Crystalline Silicon Photovoltaic Cells, Whether Or Not Assembled Into Modules From The People's Republic Of China, *Auxin Solar Placing Petition on Record*, Case Nos. A-570-979, C-570-980 (Anti-Circumvention Inquiry Concerning Malaysia, Vietnam, and Thailand) (Feb. 18, 2022) |
| Circ. Allegation | Allegation from Cassidy Levy Kent LLP, "Auxin Solar Placing Petition on Record," (Feb. 18, 2022), Appx1231–Appx1326. |
| Commerce | U.S. Department of Commerce |
| CSPV | Crystalline Silicon Photovoltaic |

| | |
|---|---|
| *Decision Memo* | Issues and Decision Memorandum for the Circumvention Inquiry With Respect to the Socialist Republic of Vietnam, (Dep't of Commerce Aug. 17, 2023), Appx1050–Appx1215. |
| *Final Determination* | *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Aug. 23, 2023), Appx1216–1230. |
| *Prelim Memo* | Memorandum from James Maeder to Lisa Wang, Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China, Preliminary Decision Memorandum for the Circumvention Inquiry With Respect to the Kingdom of Thailand, Case No. A-570-979 (Circumvention Inquiry Thailand 2022) (Dec. 1, 2022) |
| Q&V | Quantity and Value |
| R&D | Research and Development |
| Scope Clarification Memo | Letter from Akin Gump Strauss Hauer & Feld LLP, "NextEra Comments on Auxin's Circumvention Ruling Request," (May 2, 2022), at Attachment 13 (citing Commerce Memorandum, "Scope Clarification: Antidumping and Countervailing Duty Investigations of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China," (Mar. 19, 2012) |

| | |
|---|---|
| *Solar Cells* Orders | *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73018 (Dep't Commerce Dec. 7, 2012); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73017 (Dep't Commerce Dec. 7, 2012) |
| *Solar Products China Det.* | *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 76970 (Dep't Commerce Dec. 23, 2014), and accompanying Issues and Decision Memo |
| *Solar Products Orders* | *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 Fed. Reg. 8592 (Feb. 18, 2015) |
| *SolarWorld* | SolarWorld Industries America, Inc. |
| *SAA* | Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep. No. 103-316 (1994 |

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Plaintiffs Trina Solar (Vietnam) Science & Technology Co., Ltd., Trina Solar Energy Development Company Limited, and Trina Solar Co., Ltd. (collectively, "Trina" or "Plaintiffs"), in their role as plaintiffs in the above-captioned matter, hereby submit this Memorandum in Support of their Motion for Judgment upon the Agency Record in accordance with Rule 56.2(c) of the Rules of this Court. For the reasons set forth below, Plaintiffs respectfully request that the Court reverse the challenged determination of the U.S. Department of Commerce ("Commerce"), and remand with instructions consistent with this Memorandum and the Court's findings.

## I.    STATEMENT PURSUANT TO RULE 56.2(C)

### A.    Administrative Determination Under Review

This action is an appeal from Commerce's final determination in *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention with Respect to Cambodia,*

1

*Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Aug. 23, 2023),

Appx1216–1230 ("*Final Determination*"), and accompanying Issues and

Decision Memorandum for the Circumvention Inquiry With Respect to

the Socialist Republic of Vietnam, (Dep't. of Commerce Aug. 17, 2023),

("*Decision Memo*"), Appx1050–Appx1215.

### B.    Issues Presented

Plaintiffs request that this Court hold that the *Final*

*Determination* is unsupported by substantial evidence and otherwise

not in accordance with law and that the Court remand the *Final*

*Determination* with instructions to issue a new determination that is

consistent with the Court's decision. Plaintiffs seek judgment on the

agency record with respect to the following issues:

    i.    **Whether Commerce's affirmative finding of circumvention in Vietnam is supported by substantial evidence when contrasted with Commerce's finding that the nature of production of crystalline silicon photovoltaic ("CSPV") cells and modules is significant and complex?**

No. In accordance with 19 U.S.C. § 1677j(b)(2)(C), Commerce

found that the nature of the production process for CSPV cells and

modules is an extensive, significant, and technologically advanced

process. *Antidumping and Countervailing Duty Orders on Crystalline*

*Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,*

*from the People's Republic of China: Preliminary Affirmative*

*Determinations of Circumvention with Respect to Cambodia, Malaysia,*

*Thailand, and Vietnam*, 87 Fed. Reg. 75221 (Dec. 8, 2022) ("*Prelim.*

*Determination*"), Appx1031-Appx1041, and accompanying preliminary

decision memorandum (Dec. 1, 2022) ("*Prelim Memo*"), Appx1000-

Appx1030, at Appx1017-1020 (unchanged in *Decision Memo*, P.R. 749,

Appx1090-1094). Commerce determined, in comparison with ingot and

wafer production, that the production of CSPV cells and modules

involves more technological improvements, a greater number of

workers, more production steps, a greater number of inputs, and a more

extensive transformation. *Decision Memo*, Appx1093-1094. Further,

Commerce found that the production of CSPV cells requires

"sophisticated, precise, and technologically advanced equipment" and

"involves more than attaching Chinese components together." *Id.*,

Appx1094. Notwithstanding, Commerce illogically concluded that the

process of assembly or completion of CSPV cells and modules is "minor

and insignificant." *Id.*, Appx1100. Commerce's conclusion is wholly

incongruous with its detailed findings under 19 U.S.C. § 1677j(b)(1)(C),

which found that the production of CSPV cells and modules involves significant (and not "insignificant"), extensive (and not "minor") processes. Commerce's affirmative finding of circumvention is therefore unsupported by substantial evidence.

### ii.    Whether Commerce's decision to apply its circumvention finding on a country wide basis was supported by substantial evidence and is otherwise in accordance with law?

No.  The record does not support Commerce's affirmative finding of circumvention on a country-wide basis. *Final Determination*, at 57420, Appx1217.  One mandatory respondent received a negative finding of circumvention (Boviet Solar Technology Co., Ltd.)[1] and numerous non-examined companies responded to Commerce's requests for information and fully cooperated in the proceeding.   The second mandatory respondent did not fully participate in the inquiry (Vina Solar Tehcnology Co., Ltd.),[2] but Commerce failed to follow and apply AFA provisions under 19 U.S.C. § 1677e(b)(1) to non-examined companies, and therefore the country-wide application of its AFA-based

---

[1] *Final Determination*, at 57425, Appx1222.
[2] *Id.*, at 57420, Appx1217 (applying total adverse facts available to Vina after the company declined to participate in verification).

affirmative circumvention finding was not supported by substantial evidence and not in accordance with law.

## II.    Statement of Facts

CSPV cells and modules have been subjected to multiple antidumping ("AD") and countervailing ("CVD") proceedings over the last twelve years. These proceedings, and their corresponding scope clarifications, have oriented the global solar supply chain in a manner that gives rise to key issues in the instant appeal.

### A.    Solar Cells Orders

Based on a petition filed by SolarWorld Industries America, Inc. ("SolarWorld"), Commerce published AD/CVD orders on CSPV cells from China and modules possessing CSPV cells from China near the end of 2012.[3] These orders are commonly referred to as "*Solar Cells.*" Most significantly, Commerce established critical country-of-origin language through the *Solar Cells* proceedings which stated that the country of formation of the positive-negative ("p/n") junction (wherein a

---

[3] *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73018 (Dec. 7, 2012); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73017 (Dec. 7, 2012) (collectively, "*Solar Cells Orders*").

wafer[4] becomes a CSPV cell capable of converting electricity)

determines the origin of the CSPV cell for AD/CVD scope purposes.[5]

The p/n junction is formed "once the wafer is doped and an opposite

electrical orientation is imparted on the surface. When sunlight strikes

the cell, the positive and negative charge carriers are released, causing

electrical current to flow. It is at this point that the cell is capable of

generating electricity from sunlight." *Decision Memo*, at 45, Appx1094.

Accordingly, if the p/n junction of a CSPV cell is formed in China, and

subsequently sent to South Korea to be further incorporated into a solar

module, the CSPV cell will be subject to the *Solar Cells Orders* because

it contains a Chinese CSPV cell. Conversely, if a Chinese wafer is sent

---

[4] By way of background, to form a CSPV cell, polysilicon is added with boron and heated to form monocrystalline silicon. *Decision Memo*, at 41–42, Appx1090–Appx1091. After being further crystallized and cooled, the ingot is formed, which is subsequently sliced into thin "wafers." *Id*. The sliced wafers then undergo phosphorus diffusion, which gives the surface of the wafer its negative potential electrical orientation. *Id*. The phosphorus layer and a boron-doped layer together create the p/n junction of the cell. *Id*. The cell then undergoes additional chemical processes to enhance sunlight absorption before silver paste is soldered onto the cell to form electrical conduits. *Id*. After necessary testing, the completed CSPV cells are then ready to be assembled into solar modules. *Id*.

[5] *See* Letter from Akin Gump Strauss Hauer & Feld LLP, "NextEra Comments on Auxin's Circumvention Ruling Request," (May 2, 2022), at Attachment 13 (citing Commerce Memorandum, "Scope Clarification: Antidumping and Countervailing Duty Investigations of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China," (Mar. 19, 2012) ("*Scope Clarification Memo*")), Appx14431–Appx14442.

to South Korea where it is subsequently further processed into a CSPV cell, it would fall outside the scope of the *Solar Cells Orders* because the p/n junction was formed outside of China.

In determining that the p/n junction formation was the significant turning point for origin purposes, rather than an earlier process in production, such as ingot slicing or wafer production, Commerce explicitly rejected the petitioner's attempt to enlarge the scope of the orders to include CSPV cells manufactured in third countries using Chinese wafers. *Scope Clarification Memo*, at 6–8, Appx14437–Appx14440. Commerce determined that solar cells produced in third countries using Chinese wafers (i.e., prior to the formation of the p/n junction) would be outside the scope of the investigation. *Id.*, at 8–9, Appx14439–Appx14440. Further, in citing to country-of-origin issues, Commerce instructed the petitioner that wholly separate AD/CVD petitions would need to be filed to "address any dumping concerns it has regarding solar modules/panels assembled from solar cells produced in a third country." *Id.*, at 9, Appx14440.

As such, the formation of the p/n junction has long been considered the transformative step in the production process of a solar

cell. For the last twelve years, solar industry leaders and producers both in the United States and abroad have come to rely on this bright line in guiding significant investment and development decisions. Similarly, the U.S. International Trade Commission and U.S. Customs and Border Protection have all consistently relied upon Commerce's determination that the p/n junction formation serves as the key origin turning point when enforcing and weighing scope and origin issues.[6]

## B.    Solar Products Orders

On December 31, 2013, one year after the *Solar Cells Orders* were published, the same petitioner, SolarWorld, brought AD and CVD petitions against certain CSPV products from China and Taiwan (AD only).[7] In this case, petitioner sought a remedy against solar module

---

[6] *See, e.g.*, Memorandum from Daniel Alexander to James Maeder, *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells from the People's Republic of China: Sunspark Technology Inc. Scope Ruling*, Case Nos. A-570-979, C-570-980 (Oct. 23, 2020), Appx14509–Appx14515; Commerce Memorandum, *Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells from the People's Republic of China: ET Solar Inc.* (A-570-979, C-570-980) (June 15, 2021), Appx14492–Appx14507; U.S. Customs and Border Protection, Ruling H301813 (May 24, 2019), C.R. 97-105, Appx5260-Appx5263; U.S. Customs and Border Protection, Ruling H301201 (Oct. 18, 2019), C.R. 89, Appx4078–Appx4081; *Crystalline Silicon Photovoltaic Cells and Modules From China*, Inv. Nos. 701-TA-481 and 731-TA-1190, USITC Pub. 4360 (Nov. 2012) (Final) at 5-6, Appx15334-15335.

[7] *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China*: *Final Determination of Sales at Less Than Fair Value*, 79 Fed.

exports by Chinese producers that had switched from using Chinese cells to using third-country cells, largely from Taiwan, as such goods were outside the scope of the *Solar Cells Orders*.[8] Commerce subsequently issued AD/CVD orders on February 18, 2015, commonly referred to as the "*Solar Products*" orders.[9] These orders covered solar modules produced in China using cells produced outside of China.[10]

## C.    Circumvention Inquiries

On February 8, 2022, nearly a full decade after the *Solar Cells Orders*, Auxin Solar Inc. ("Auxin"), a small U.S. producer of solar modules, filed a request with Commerce to initiate country-wide circumvention inquiries pursuant to 19 U.S.C. § 1677j(b)(1) to determine whether CSPV cells and modules completed in Cambodia, Malaysia, Thailand, or Vietnam using parts and components manufactured in China were circumventing the *Solar Cells Orders*. *See*

---

Reg. 76970 (Dec. 23, 2014), and accompanying Issues and Decision Memo, at 6 ("*Solar Products China Det.*").

[8] *Solar Products China Det.*, at 17–18.

[9] *See Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 Fed. Reg. 8592 (Feb. 18, 2015); *Certain Crystalline Silicon Photovoltaic Products From Taiwan: Antidumping Duty Order*, 80 Fed. Reg. 8596 (Feb. 18, 2015).

[10] *Id.*, at 11–16.

Allegation from Cassidy Levy Kent LLP, "Auxin Solar Placing Petition on Record," (Feb. 18, 2022) ("Circ. Allegation"), Appx1231–Appx1326. The circumvention allegation affected over $5 billion of solar imports into the United States, consisting of over 80 percent of imported CSPV products. *See* Circ. Allegation, at Exhibit 1, Appx1336. Upon filing its circumvention request, numerous interested parties and U.S. solar industry leaders expressed concerns that Commerce cannot unlawfully expand the initial scope of the *Solar Cells Orders* through a circumvention proceeding to include non-Chinese cells, which it expressly excluded from scope of the Orders.[11] Despite the overwhelming opposition, Commerce initiated country-wide anti-circumvention inquiries on the *Solar Cells Orders* on April 1, 2022. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders*, 87 Fed. Reg. 19071 (Apr. 1, 2022), Appx17186-Appx17193.

---

[11] *See e.g.*, Letter from Enel Green Power North America Inc, "Request to Reject Anti-Circumvention Inquiries," (Mar. 4, 2022) at 3–8, Appx13176–Appx13182; Memorandum to the File, "Letter from Solar Energy Industries Association," (Mar 8, 2022), Appx13213–Appx13218; Memorandum to the File, "Letter from United State Senators," (Mar. 11, 2022), Appx13274–Appx13278.

On May 12, 2022, Commerce selected two mandatory respondents for the Vietnam segment of the circumvention inquiries: Boviet Solar Technology Co., Ltd. ("Boviet") and Vina Solar Technology Company Limited ("Vina Solar"). *See* Commerce Memorandum, "Circumvention Inquiry with Respect to the Socialist Republic of Vietnam: Respondent Selection," (May 12, 2022), Appx5809-Appx5821.

On December 1, 2022, Commerce preliminarily determined that imports of CSPV cells and modules exported from Cambodia, Malaysia, Thailand, and Vietnam using parts and components from China are circumventing the AD/CVD *Solar Cells Orders* under 19 U.S.C. § 1677j(b)(1). *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention with Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 87 Fed. Reg. 75221 (Dec. 8, 2022) ("*Prelim. Determination*"), Appx1031-Appx1041, and accompanying preliminary decision memorandum (Dec. 1, 2022) ("*Prelim Memo*"), Appx1000-Appx1030.

As part of its preliminary determination, Commerce analyzed whether "the process of assembly or completion" in Vietnam was "minor or insignificant." *See* 19 U.S.C. §§ 1677j(b)(1)(C), 1677j(b)(2). Specifically, for each mandatory respondent, Commerce considered and weighed the five statutory factors under 19 U.S.C. § 1677j(2):  (A) the level of investment in the foreign country; (B) the level of research and development in the foreign country; (C) the nature of the production process in the foreign country; (D) the extent of production facilities in the foreign country; and (E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States ("minor or insignificant" factors). In applying this analysis, Commerce compared the production of CSPV cells and modules by the Vietnam respondents to that of their affiliated producers in China. *Prelim Memo*, at 16, Appx1015.

Commerce found that all five factors under 19 U.S.C. § 1677j(b)(2) weighed against a finding of circumvention for Boviet. *Id*., at 16–22, Appx1015–Appx1021. Accordingly, Commerce found that Boviet's process of completion or assembly in Vietnam was not minor or

insignificant, and determined that the company was not circumventing the *Solar Cells Orders*. *Id*.

However, for Vina, Commerce found that three out of the five "minor or insignificant" statutory factors weighed in favor of finding circumvention, and it preliminarily determined that the company was circumventing the *Solar Cells Orders*. *Id*. Specifically, Commerce found that Vina's level of investment, level of research and development, and extent of production facilities in Vietnam were minor and insignificant when compared to that of its Chinese affiliate. *Prelim Memo*, at 17, 18, and 21, Appx1016, Appx1017, and Appx1020. However, similar to Boviet, Commerce found that Vina's value of processing in Vietnam represented a significant portion of the value of the merchandise imported into the United States, which weighed *against* a finding of circumvention. *Id*., at 22, Appx1021.

More importantly, for the "nature of production process" factor under 19 U.S.C. § 1677j(2)(C), Commerce did not make any company-specific findings based on respondent information. *Id*., at 18, Appx1017. Instead, Commerce made a broad, "all-inclusive" finding as to the

significant nature of cell and module production in Vietnam when

compared to ingot and wafer production in China:

> {R}elative to ingot and wafer production, solar cell and
> module production involves a greater number of stages, each
> requiring a high level of technological sophistication.
> Specifically, the process for turning wafers into solar cells
> requires an expensive, multi-stage assembly line requiring
> high-technological machinery and workers with strong
> technological knowledge. While ingot and wafer production
> require large amounts of upfront capital and technical
> capabilities, the ITC found solar cell production to be the
> "most capital intensive part of the manufacturing process,"
> and "a highly automated, capital intensive, and
> technologically sophisticated process, requiring skilled
> technicians and employees with advanced degrees."

> Moreover, module production also involves a large number of
> varied inputs consumed in a complex, multi-step production
> process that requires precision, highly skilled workers, and
> accurate quality-testing equipment at multiple stages.
> Furthermore, the physical transformation of polysilicon
> rocks into wafers (*i.e.*, the portion of the production process
> occurring in China) is less extensive than the transformation
> of wafers into solar modules (*i.e.*, the portion of the
> production process occurring in third countries).86 Only a
> handful of inputs are used to convert polysilicon rocks into
> wafers, whereas converting a solar cell into a solar module
> requires approximately 100 different inputs.

> Additionally, Commerce previously noted that cell
> production is where the essence of a solar module is realized.
> Specifically, Commerce noted that once a wafer is doped and
> an opposite electrical orientation is imparted on the surface,
> it results in the creation of a p/n junction. When sunlight
> strikes the cell, the positive and negative charge carriers are
> released, causing electrical current to flow. It is at this point

> that the cell is capable of generating electricity from
> sunlight.
>
> Therefore, Commerce has determined that it is only when
> the p/n junction is created that a wafer is no longer just a
> wafer, but is a solar cell that is subject to the *Orders*.
> Commerce also noted in the underlying investigation that,
> "{t}he essential component of solar modules/panels is the
> solar cell since the purpose of solar modules/panels is to
> convert sunlight into electricity and this process occurs in
> the solar cells. . ."
>
> Thus, we find that the nature of the production performed by
> the respondents in the third country is not minor or
> insignificant compared to either processing polysilicon into
> wafers, or ingots into wafers, in China, which does not weigh
> in favor of finding circumvention.

*Id.*, at 20–21, Appx1019–2020. Commerce made this same finding

on the nature of the cell and module production process in all four

segments of the circumvention proceeding. *Prelim Memo*, at 17,

18, and 21, Appx1016, Appx1017, and Appx1020.

On August 23, 2023, Commerce published its *Final Determination*

in the Federal Register. Commerce did not change its circumvention

analysis as to Boviet. *Decision Memo*, at 1, Appx1050. As for Vina,

Commerce applied adverse facts available ("AFA") based on the

company's non-cooperation at the on-site verification. *Final*

*Determination*, at 57420, Appx1217. Based on the AFA treatment of

Vina, as well as other non-responsive companies which did not submit

15

Q&V responses, Commerce continued to find that CSPV cells and modules produced in Vietnam using parts and components manufactured in China and exported to the United States were circumventing the *Solar Cells Orders*. *Decision Memo*, Appx1100-1102. In applying AFA to Vina, Commerce broadly determined that four out of the five "minor or insignificant" factors weighed in favor of circumvention based on the company's non-cooperation. *Id*. Critically, Commerce did not modify its analysis of the "nature of the production process" factor from the preliminary determination, and it continued to find that production of CSPV cells and modules involves "significant, extensive" processes. *Id*., Appx1090.

Commerce applied its determination on a country-wide basis. *Id*., Appx1110-1113.

## III.   Standard of Review

In reviewing a challenge to Commerce's determination in a circumvention inquiry, the Court "shall hold unlawful any determination, finding, or conclusion found. . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951). It must be "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939). The Court "looks to the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted), and determines "whether the evidence and reasonable inferences from the record support {the agency's} finding." *Daewoo Elecs. Co. v. Int'l Union of Elec., Tech., Salaried & Mach. Workers, AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (internal quotation marks and citation omitted). Commerce must provide a "rational connection between the facts found and the choice made," *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962), and "examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983).

Commerce is also required by law to include in its final determination "an explanation of the basis for its determination that addresses relevant arguments{ } made by interested parties who are parties to the investigation or review." 19 U.S.C. § 1677f(i)(3)(A). *See also NMB Sing. Ltd.* v. *United States,* 557 F.3d 1316, 1319 (Fed. Cir. 2009). Further, the Court will not sustain Commerce's determination when Commerce failed to address a party's relevant argument. *See Nucor Corporation v. United States*, 461 F. Supp. 3d 1374, 1380 (Ct. Int'l Trade 2020) (*citing Stein Industries Inc. v. United States*, 365 F. Supp. 3d 1364, 1371 (Ct. Int'l Trade 2019).

## IV.   ARGUMENT

### A.   Substantial Evidence Does Not Support a Conclusion that the Process of Assembly or Completion in Vietnam is Minor or Insignificant

As addressed below, Plaintiffs challenge Commerce's finding under 19 U.S.C. § 1677j(b)(1)(C), in which Commerce determined that the process of assembly or completion in Vietnam is minor or insignificant. *Decision Memo*, Appx1100. Yet, Commerce also reconfirmed in these inquiries that CSPV cell and module manufacturing (including the formation of the p/n junction) is a major,

complex manufacturing process that does not amount to minor or insignificant processing. *Id.*, Appx1090-1094. Thus, Commerce's findings on the extensive complexity of CSPV cell and module production is incongruent with its overall conclusion that the process of assembly or completion in Vietnam is minor or insignificant. Further, Commerce failed to explain or address any arguments raised on why its findings on the "nature of the production process" should not result in a negative finding of circumvention. Instead, Commerce broadly and erroneously relied upon its AFA application on a company-specific basis to support its affirmative circumvention determination.

### 1. Legal Framework

Unlike AD/CVD investigations, circumvention proceedings do not impose injury requirements or require a showing of domestic industry support. As such, any interested party, no matter how small, may file a request to initiate a circumvention inquiry and bypass the typical thresholds put in place for AD/CVD petitions. In order to expand the scope of existing AD/CVD orders through a finding of circumvention via third-country processing, Commerce must determine that ***every statutory element*** under 19 U.S.C. § 1677j(b)(1) has been met:

(A)    Whether the merchandise imported into the United States from Cambodia, Malaysia, Thailand, and Vietnam is the same class or kind as merchandise that is subject to the Orders;

(B)    Whether before importation into the United States, such merchandise is completed or assembled in a third country from merchandise that is subject to the Orders or produced with inputs from the country under the Orders;

(C)    Whether the process of assembly or completion in the third country is minor or insignificant;

(D)    Whether the value of the merchandise produced in the country subject to the Orders is a significant portion of the total value of the merchandise exported to the United States; *and*

(E)    Whether the action is appropriate to prevent evasion of the Orders.

Based on the plain language of the statute that uses the conjunction "and" for the list of mandatory factors, if one of the above statutory elements is missing, Commerce cannot reach an affirmative finding of circumvention. Often, the third statutory element, 19 U.S.C. § 1677j(b)(1)(C), whether the process of assembly or completion is minor or significant, is the most fact intensive. The statute further provides five factors that Commerce must consider and weigh in determining whether processing in the third country is "minor or insignificant:"

(A)    the level of investment in the foreign country,

(B)    the level of research and development in the foreign country,

(C)    the nature of the production process in the foreign country,

(D)    the extent of production facilities in the foreign country, and

(E)    whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. §1677j(b)(2). The Statement of Administrative Action explained that no single factor under § 1677j(b)(2) will be controlling.[12] Accordingly, Commerce's practice has been to evaluate each of the factors as it exists in the third country and consider the totality of its analysis of such factors when making a determination. *Prelim Memo*, at 16, Appx1015.

### 2. Commerce's Analysis of the "Nature of Production Process" Compels a Negative Finding of Circumvention

Commerce's analysis of the significance of CSPV cell and module production compels a negative finding of circumvention in this case. This was notably the ***only factor*** that remained unchanged in the *Final Determination*, because, unlike the other four factors under 19 U.S.C. § 1677j(b)(2), Commerce did not rely on any mandatory

---

[12] Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Rep. No. 103-316 (1994) ("SAA"), at 893.

respondent data for its analysis of the nature of production process. *Decision Memo*, at 41–45, Appx1090–Appx1094. Thus, while Commerce's AFA application as to Vina affected its analysis of the other four factors under 19 U.S.C. § 1677j(b)(2), Commerce's findings on the "nature of production process" applied broadly to all CSPV cell and module producers in all four segments of the circumvention proceeding. *Id*. Regardless of any company-specific AFA findings, the significance of this finding demonstrates that Commerce's entire affirmative circumvention determination is fundamentally incongruent and is unsupported by substantial evidence.

The logic of circumvention proceedings rests on the idea that producers could simply exploit existing AD/CVD orders and set up a "screwdriver" assembly in a third country to change the country of origin.[13] A key component to a circumvention analysis, therefore, is whether the process of assembly or completion is minor or insignificant. If it is easy to set up manufacturing capabilities in a third country, it is relatively easy to move production to other countries as a means to evade existing AD/CVD orders.

---

[13] SAA, at 893–894.

However, if a production process is significant, extensive, and capital intensive, it is much more difficult to demonstrate that manufacturing was established in the third country as a means to circumvent existing AD/CVD orders. Rather, producers that put in significant capital, equipment, planning, and labor are investing substantial resources to expand their operations to third countries in order to grow and develop legitimate business opportunities. Thus, the line between circumvention and non-circumvention critically rests on the "minor or insignificant" nature of the production process. In other words, if a manufacturing process is so extensive and complex, such is the case with CSPV cells and modules, it logically cannot also be found to be circumventing an existing AD/CVD order.

When compared to the production of ingots and wafers, Commerce made numerous key findings on the complex and extensive nature of CSPV cell production through its comparison. First it noted that the production of CSPV cells involves "significant technical requirements. . . and changing technologies." *Decision Memo*, at 43, Appx1092. Specifically, it noted that:

> {W}hile "the technology used to produce ingots has not significantly changed since it was created, the same is not

Case No. 23-00228                                        NON-CONFIDENTIAL

> true for solar cells. Technology improvements in the wafer-to
> cell process are responsible for most of the performance
> improvements of solar panels. Because of technological
> improvements to solar cells, module makers must regularly
> upgrade their production lines to avoid becoming obsolete.
> Hence, there are also meaningful technological requirements
> that must be met before producing solar cells.

*Id.* (internal quotations omitted).  As for labor, Commerce found that

CSPV cell and module production requires significantly more direct

manufacturing workers as well as a skilled labor force, when compared

to ingot and wafer production. *Id.*, at 44, Appx1093.

More critically, Commerce emphasized the nature of production

performed in *each* production step of the CSPV cell process:

> The IEA Report specifies that while each segment of the
> manufacturing processes require various types of special
> equipment, solar cell production requires sophisticated,
> precise and advanced automation equipment, and solar
> module production requires highly automated machinery
> and accurate quality testing requirement at multiple stages.
> Meanwhile, the IAE Report indicates that ingot production
> uses simpler, more conventional equipment. Therefore,
> producing solar cells and modules in the inquiry country
> involves a multi-step production process that requires more
> precise and sophisticated equipment at multiple stages
> compared to producing ingots and wafers in China.

*Id.*, at 44, Appx1093 (internal quotations omitted). Commerce also

emphasized that CSPV cell and module production requires ***over 100***

***different inputs***, "whereas converting polysilicon into wafers only involves a handful of inputs." *Id*. (emphasis added).

These findings go to the heart of Commerce's inquiry into whether the process of assembly or completion in Vietnam is "minor or insignificant." Because record evidence overwhelmingly supports a finding that the nature of the producing CSPV cells and modules is significant, extensive, and complex, Commerce's ultimate affirmative circumvention finding is rendered completely illogical. Further, based on Plaintiffs' research, it appears that *Commerce has never previously reached an affirmative finding of circumvention where it also found that the nature of production process was not minor or insignificant*.[14] Because each statutory factor under 19 U.S.C. § 1677j(b)(1) *must be met* to reach an affirmative determination of circumvention, and because substantial evidence contradicts Commerce's finding of one of these statutory factors—that the process of assembly or completion in Vietnam was "minor or insignificant,"— Commerce's affirmative circumvention determination cannot be upheld.

---

[14] *See e.g.*, *Preliminary Negative Determination of Circumvention of the Antidumping Order on Polyethylene Terephthalate Film, Sheet, and Strip From the United Arab Emirates*, 80 Fed. Reg. 26,229 (May 7, 2015), and accompanying IDM at 7.

### 3. Commerce's Failed to Explain Why Production in Vietnam Circumvents the Orders Despite the Fact that the Nature of Cell and Module Production Is Significant

Commerce's finding regarding the significant nature of CSPV cell and module production, on its own, should have compelled a negative circumvention determination. Trina and others argued as such in its briefing to Commerce.[15] But, Commerce ignored this aspect of its findings and instead relied on its AFA determination with regard to non-responsive companies and failed to address or provide any adequate explanation for its "minor or insignificant" finding under 19 U.S.C. §1677(b)(1)(C):

> While parties arguing that we should not find circumvention have made numerous comments and cited to information on the record and how we should treat and weigh it, we have not addressed these comments because they are moot because we have applied AFA to Vina and no party has argued that we should not apply AFA to the non-cooperating companies, including Vina.

*Decision Memo*, at 51, Appx1100.

Commerce's conclusory statement that its AFA finding renders its "minor and insignificant" analysis moot is legally and factually

---

[15] *See* Trina Second Tranche Case Brief, (Apr. 19, 2023), PD 714, Appx21641-Appx21664 ("Trina Brief"); *see also* NextEra Second Tranche Case Brief, (Apr. 20, 2023), CD 454, Appx12774-Appx12793 ("NextEra Brief").

incorrect. First, Commerce did not modify its finding on the significance of the "nature of production process," nor did it apply AFA to any part of its analysis under this factor. Decision Memo, at 41–45, Appx1090–Appx1094. Commerce cannot hide behind the company-specific AFA applied elsewhere in its decision as a means to ignore arguments raised by interested parties.

Second, Commerce has an "obligation" to address parties' relevant arguments. *See SKF USA Inc. v United States*, 630 F.3d 1365 (Fed. Circ. 2011) ("Commerce also has an obligation to address important factors raised by comments from petitioners and respondents,"); *see also Stein Industries Inc. v. United States*, 365 F.Supp.3d 1364, 1372 (Ct. Int'l Trade 2019) (remanding to Commerce to consider an argument that Commerce failed to address); *Coalition of American Flange Producers v. United States*, 448 F.Supp.3d 1340, 1355 (Ct. Int'l Trade 2020) (remanding to Commerce after finding that it "did not address information raised that may cast doubt on the reasonableness of a position taken by the agency."). Both Trina and NextEra explained why

NON-CONFIDENTIAL

Commerce's nature of processing determination compelled a negative determination of circumvention.[16]

Commerce therefore erred by entirely sidestepping arguments made by numerous parties that its analysis of the "nature of the production process" should compel a negative finding of circumvention under 19 U.S.C. § 1677j(b)(1)(C). This issue was material to Commerce's ultimate affirmative circumvention finding, and therefore Commerce was obliged to address interested parties' arguments. Commerce also failed to address the fact that it reached conflicting conclusions which cannot be reconciled—that a production process can be complex, significant, and extensive, while also being "minor and insignificant."

For all these reasons, the Court should hold that Commerce's circumvention finding is not supported by substantial evidence. Given the complexity of production CSPV cells and modules, the record does not support an affirmative finding of circumvention, and Commerce failed to address material arguments made by interested parties articulating this inconsistency.

---

[16] *See* Trina Brief, Appx21652-Appx21656; *see also* NextEra Brief, Appx12785-Appx12788.

### B.    Commerce's Decision to Apply its Circumvention Finding on a Country-Wide Basis Is Not Supported by Substantial Evidence

Commerce reached an affirmative *country-wide* circumvention determination in Vietnam after determining that (1) one mandatory respondent, Boviet, was not circumventing the *Solar Cells Orders*, and (2) the other mandatory respondent, Vina, was circumventing the *Solar Cells Orders* based solely on an application of AFA. *Decision Memo*, at 61–62, Appx1110–1111. Commerce also applied AFA to eight companies which failed to timely submit Q&V questionnaire responses. *Final Determination*, at 57425, Appx1222. The consequences of Commerce's country-wide determination means that non-examined, cooperative Vietnamese exporters, such as Plaintiffs, are subjected to an affirmative circumvention finding based on the AFA treatment of a select few exporters. This AFA determination does not comply with the statute, and Commerce may not extend its AFA findings to cooperative, non-examined companies. Accordingly, Commerce's decision to reach an affirmative finding of circumvention on a country-wide basis solely from the AFA treatment of a select few companies is not in accordance law or supported by substantial evidence.

## 1. Legal Framework

Under the statutory scheme covering the use of "facts otherwise available," Commerce must follow a two-part process. First, Commerce must "identify a {factual} hole in the administrative record."[17] 19 U.S.C. § 1677e(a) provides that Commerce shall "use the facts otherwise available in reaching the applicable determination" if:

(1)    necessary information is not available on the record, or

(2)    an interested party or other person–

    (A)    withholds information that has been requested by {Commerce},

    (B)    fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,

    (C)    significantly impedes a proceeding under this subtitle, or

    (D)    provides such information but the information cannot be verified as provided in section 1677m(i) of this title.

Second, to apply an *adverse inference* in selecting the facts available to make the *applicable determination*, Commerce must also find that "an interested party has failed to cooperate by not acting to

---

[17] *Catfish Farmers of America v. United States*, Not Reported in Fed.Supp., 2023 WL 4560815 (Ct. Int'l Trade 2023), at 8.

the best of its ability. . ." 19 U.S.C. § 1677e(b)(1). In doing so,

Commerce "may use an inference that is adverse to the interests of *that*

*party* in selecting from among the facts otherwise available." §

1677e(b)(1)(A) (emphasis added). Commerce has "wide, though not

unbounded, discretion to select adverse facts that will create the proper

deterrent to non-cooperation with its investigations." *See e.g.,*

*Papierfabrik August Koehler SE v. United States,* 843 F.3d 1373, 1380

(Fed. Cir. 2016); *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298

F.3d 1330, 1339 (Fed. Cir. 2002)).

    The courts have repeatedly remanded Commerce determinations

that apply AFA-based outcomes to cooperative parties without

supporting record evidence.[18]  For example, the Federal Circuit has

---

[18] *See* NextEra Brief, Appx12788-12791, *citing Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) (vacating and remanding the CIT affirmation of a separate rate calculated using the simple average of the de minimis rate of a mandatory respondent and an AFA rate); *Yantai Oriental Juice Co. v. United States*, 27 CIT 477 (2003) (remanding a remand redetermination that calculated separate rates for companies that fully responded to Commerce's antidumping questionnaire but were not selected for investigation by using a weighted average of the zero rate of the mandatory respondents and the China-wide rate based on AFA); *SKF USA Inc. v. United States*, 675 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) (remanding application of AFA against a cooperative respondent based on noncooperation by an unaffiliated supplier because "{t}he court cannot accept a construction of 19 U.S.C. § 1677e(b) under which the party who suffers the effect of the adverse inference is not the party who failed to cooperate"); *Navneet Publ'ns (India) Ltd. v. United States*, 999 F. Supp. 2d 1354 (Ct. Int'l Trade 2014) (remanding a final determination that calculated an all-others rate by unreasonably

explained that "{a}ssigning a non-mandatory, separate rate respondent a margin equal to over 120% of the only fully investigated respondent with no other information is unjustifiably high and may amount to being punitive, which is not permitted by the statute." *Yangzhou Bestpak*, 716 F.3d at 1379. These decisions demonstrate the court's longstanding position that "there is no basis in the statute for penalizing cooperative uninvestigated respondents due solely to the presence of non-cooperative uninvestigated respondents who receive . . . AFA." *Amanda Foods*, 647 F. Supp. 2d at 1381 (citing *Yantai Oriental Juice*, 27 CIT at 487 (2003)).

Moreover, when Commerce makes an "applicable determination" under 19 U.S.C. § 1677e(a) using facts otherwise available and uses adverse inferences under 19 U.S.C. § 1677e(b), such adverse inferences may be "derived from –

(A)    the petition,

(B) a final determination in the investigation under this subtitle,

---

using the simple average of the rates assigned to the two mandatory respondents and the AFA rates assigned to two uncooperative respondents); *see also Amanda Foods (Vietnam) Ltd., v. United States*, 647 F. Supp. 2d 1368 (Ct. Int'l Trade 2009) (remanding final results of review where Commerce assigned previously calculated rates to separate rate respondents instead of assigning them the de minimis margins calculated for the mandatory respondents).

(C) any previous review under section 1675 of this title or

determination under section 1675b of this title, or

(D) any other information placed on the record."

The Court of Appeals for the Federal Circuit ("CAFC") has addressed this issue. The CAFC explained the use of AFA "does not obviate Commerce's obligation to make the 'applicable determination' and it also does not obviate Commerce's obligation to support any such determinations with substantial evidence."[19] The statute does not permit Commerce to use AFA as a universal plug to reach conclusions regarding the applicable determination. Rather, the statute permits Commerce to make adverse inferences when choosing among the four information sources identified in 19 U.S.C. § 1677e(b) to make the appliable determination.

### 2. Commerce's Country-Wide Affirmative Circumvention Determination Is Not in Accordance with Law or Supported by Substantial Evidence

Although Commerce made AFA findings as to unresponsive or uncooperative companies, Commerce erred by also extending its AFA-based decision to all non-examined companies through its country-wide

---

[19] *Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1329-29 (Fed. Cir. 2020).

application. Commerce never made any findings under 19 U.S.C.
§ 1677e(b)(1) that non-examined companies, including Plaintiffs, failed
to cooperate to the best of their abilities. Consequently, Commerce
impermissibly subjected all cooperative, non-examined companies to an
affirmative finding of circumvention without having found that such
non-examined companies failed to cooperate.

Commerce asserts that its decision to apply an AFA-based
decision to non-responsive companies is consistent with its prior
decisions. Commerce relies on its decisions in the circumvention inquiry
of *Uncoated Paper from China* and its AD administrative reviews of
*FDPSF form Taiwan* and *FDPSF from Korea*. Decision Memo, at 62,
Appx1111. As explained in turn below, Commerce's reliance on these
decisions is misplaced, and does not support its decision to stretch its
AFA-based findings to all non-examined companies in this inquiry.

In the circumvention inquiry of *Uncoated Paper from China*,
Commerce applied AFA to <u>five</u> exporters of uncoated paper that did not
cooperate to Commerce's requests for information.[20] Because three of

---

[20] *See Certain Uncoated Paper From the People's Republic of China:
Affirmative Preliminary Determinations of Circumvention of the Antidumping and
Countervailing Duty Orders for Uncoated Paper Rolls*, 85 Fed. Reg. 72624 (Nov. 13,

these exporters represented the largest volume of uncoated paper rolls exported to the United States from China, Commerce applied its affirmative decision on a country-wide basis. *Id*. Yet, this case has key factual differences from the circumvention inquiry on appeal here. In *Uncoated Paper from China*, Commerce applied AFA to *all three* selected mandatory respondents. *Id*., at 7. In fact, none of the mandatory respondents even responded to Commerce's circumvention questionnaires. *Id*. In addition, Commerce only issued Q&V questionnaires to <u>seven</u> producers, and its AFA findings applied to five out of seven companies from which it sought information. *Id*., at 2.

Here, Commerce issued Q&V questionnaires to <u>26</u> companies, and applied AFA to eight such companies.[21] More critically however, is that Commerce did not apply AFA to all mandatory respondents. Instead, Commerce reached a *negative* circumvention finding for one mandatory

---

2020) and accompanying Preliminary Issues and Decision Memorandum, at 14–15 (Nov. 6, 2020) ("*Uncoated Paper from China Circ. Det.*"), *unchanged* in *Certain Uncoated Paper From Brazil, the People's Republic of China, and Indonesia: Affirmative Final Determinations of Circumvention of the Antidumping Duty Orders and Countervailing Duty Orders for Certain Uncoated Paper Rolls*, 86 Fed. Reg. 71025 (Dec. 14, 2021).

[21] *See* Memorandum to Robert Bolling, Acting Director AD/CVD Operations, Office IV, "Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China- Circumvention Inquiry with Respect to the Socialist Republic of Vietnam: Respondent Selection," at 3 (May 12, 2022), Appx5811.

respondent, which renders its country-wide application of the affirmative finding even more consequential.

In *FDPSF form Taiwan* and *FDPSF from Korea*, Commerce issued antidumping duty orders based on its AFA determinations for one or more uncooperative mandatory respondents even though it calculated a zero percent dumping margin for the only cooperative mandatory respondent.[22] But in that situation, issuance of the orders was the only way that Commerce could apply a determination to the non-cooperative parties that would be adverse to those offending parties. The orders were a necessary outcome in order to impose duties on the non-cooperating parties. Without the orders, the parties' non-cooperation would have been rewarded. But that is not the case in a circumvention determination. In this case, Commerce could have reached affirmative circumvention determinations based on AFA and applied those determinations only to the parties that failed to cooperate.

---

[22] *Fine Denier Polyester Staple Fiber From the Republic of Korea: Final Affirmative Determination of Sales at Less Than Fair Value*, 83 Fed. Reg. 24743, (May 30, 2018), *and Fine Denier Polyester Staple Fiber From Taiwan: Final Affirmative Determination of Sales at Less Than Fair Value* 83 Fed. Reg. 24745, 24756 (May 30, 2018).

Moreover, in a prior appeal of an affirmative circumvention determination, this Court determined that Commerce's application of an AFA-based country-wide antidumping cash deposit rate was inconsistent with the remedial nature of the circumvention statute. *See Shelter Forest International Acquisition, Inc. v. United States*, 497 F.Supp.3d 1388, 1403 (Ct. Int'l Trade 2021) ("Commerce shall provide Plaintiffs with an opportunity to demonstrate whether they qualify for a rate that is not derived from an AFA rate or otherwise explain why it is permissible not to provide Plaintiffs with this opportunity.").

Accordingly, Commerce may not apply AFA-based decisions against companies which were not initially subject to the original adverse finding. Doing so would be contrary to the AFA provision under § 1677e(b)(1), which requires a finding that "a party" has failed to cooperate to the best of its ability, not that an entire group of non-examined respondents shall be deemed culpable of the same lack of cooperation. Commerce's country-wide application of its AFA-based affirmative circumvention finding is not permitted by the statute and should be remanded.

Moreover, Commerce's country-wide affirmative circumvention determination relied on findings not supported by substantial evidence. In defending its decision to apply its AFA determination on a country-wide basis, Commerce explained that:

> Although Commerce may limit its examination to individual respondents in a country-wide circumvention inquiry, it cannot limit decision solely to the results of the analysis of the individually examined respondents, but must consider the entire results of its inquiry. The results of this inquiry show that multiple firms in Vietnam are circumventing the Orders. Therefore, we have continued to reach a country-wide affirmative circumvention determination.

*Decision Memo*, at 62, Appx1111. However, Commerce's explanation is not based on substantial evidence. First, Commerce's inquiry did not reveal that "multiple firms in Vietnam are circumventing the Orders." Commerce applied AFA to one mandatory respondent, Vina, based on its refusal to participate in verification. *Final Determination*, at 57420, Appx1217. Second, Commerce applied AFA to companies that did not submit a response to Commerce's Q&V questionnaires. *Id*. In other words, Commerce's final determination made *no company-specific findings* on whether or not these companies were circumventing the *Solar Cells Orders*. In fact, Commerce's only factual finding in the final determination, related to the significant nature of the CSPV cell and

module production process in Vietnam, applied broadly to all CSPV cell and module producers, regardless of any company-specific AFA application. *Decision Memo*, at 41, Appx1090 (explaining that Commerce's finding "is not specific to any one respondent but encompasses the essence of manufacturing performed by all the respondents."). Notably, this finding applied equally to the cooperative non-examined Vietnamese producers and exporters, and thus the only finding on the record that directly bears on whether those companies are circumventing weighs strongly against any affirmative circumvention finding.

Because Commerce made no factual findings that "multiple firms in Vietnam" were circumventing the *Solar Cells Orders*, its affirmative circumvention finding is not supported by substantial evidence. Instead, in relying on its application of AFA, Commerce broadly found that four out of the five "minor or insignificant" factors weighed in favor of finding circumvention. *Decision Memo*, Appx1100-1102. But Commerce did not actually address the statutory factors necessary for reaching the applicable determination. Instead, Commerce simply claimed that such issues were moot. *Id.*, at 51, Appx1100. Because Commerce did not

Case No. 23-00228                                                NON-CONFIDENTIAL

address the respondent parties' arguments regarding the minor

processing criteria and it did not identify what information upon which

it was relying to make the applicable determination, particularly with

respect to the non-examined cooperative producers and exporters,

Commerce's decision should be remanded.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the

Court grant their Motion for Judgment on the Agency Record and

remand this case to Commerce with instructions consistent with the

points set forth in this Memorandum.

Respectfully submitted,

/s/ Jonathan M. Freed

Jonathan M. Freed
MacKensie R. Sugama
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE,
Suite 500
Washington, DC  20003
Tel: (202) 223-3760
jfreed@tradepacificlaw.com

*Counsel for Plaintiffs Trina Solar
(Vietnam) Science & Technology Co.,
Ltd., Trina Solar Energy Development*

*Company Limited, and Trina Solar Co., Ltd.*

Dated: June 25, 2024

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____
                                        )
TRINA SOLAR (VIETNAM) SCIENCE &         )
TECHNOLOGY CO., LTD., ET AL.,           )
                                        )
                    *Plaintiffs,*       )
                                        )
        and,                            )      Ct. No. 23-00228
                                        )
FLORIDA POWER & LIGHT COMPANY,          )
                                        )
                    *Plaintiff-Intervenor,*  )
                                        )
        v.                              )
                                        )
UNITED STATES                           )
                                        )
                    *Defendant,*        )
                                        )
        and,                            )
                                        )
AUXIN SOLAR INC., ET ANO.,              )
                                        )
                    *Defendant-Intervenors.*  )
_____ )

## CERTIFICATE OF COMPLIANCE

The undersigned counsel at Trade Pacific PLLC hereby certifies

that the Memorandum of Law in Support of Plaintiffs' Motion for

Judgment Upon the Agency Record, dated June 25, 2024, complies with

the word-count limitation described in the Standard Chambers

Procedures. The memorandum of law contains 8994 words according to the word-count function of the word-processing software used to prepare the memorandum.

Respectfully submitted,

/s/ Jonathan M. Freed

Jonathan M. Freed
MacKensie R. Sugama
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, DC  20003
Tel: (202) 223-3760
jfreed@tradepacificlaw.com

*Counsel for Plaintiffs*

Dated: June 25, 2024