IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____

|  |  |  |
|---|---|---|
| TRINA SOLAR (VIETNAM) SCIENCE & TECHNOLOGY CO., LTD., *ET AL.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| FLORIDA POWER & LIGHT CO., | ) ) | |
| Plaintiff-intervenor, | ) ) | |
| v. | ) ) | Court No. 23-00228 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| AUXIN SOLAR INC. ET ANO, | ) ) | |
| Defendant-intervenors. | ) ) | |

_____ )

---

### DEFENDANT'S OPPOSITION TO PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S RULE 56.2 MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, Jr.
Assistant Director

STEPHEN C. TOSINI
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-5196
Email:  stephen.tosini@usdoj.gov

October 21, 2024                    Attorneys for Defendant

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____
                                                      )
TRINA SOLAR (VIETNAM) SCIENCE & )
TECHNOLOGY CO., LTD., *ET AL.*,         )
                                                      )
    Plaintiffs,                          )
                                                      )
    and                                   )
                                                      )
FLORIDA POWER & LIGHT CO.,          )
                                                      )
    Plaintiff-intervenor,            )
                                                      )
    v.                                      )          Court No. 23-00228
                                                      )
UNITED STATES,                              )
                                                      )
    Defendant,                          )
                                                      )
    and                                   )
                                                      )
AUXIN SOLAR INC. ET ANO,              )
                                                      )
    Defendant-intervenors.          )
_____ )

## ORDER

On consideration of plaintiffs' and plaintiff-intervenor's motions for judgment on the administrative record, defendant's opposition, and all other pertinent papers, it is hereby

ORDERED that the motions are denied and, it is further

ORDERED that judgment is entered for the United States.


Dated:_____                    _____
       New York, N.Y.                              JUDGE

# TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 .................................................2

    I.    Administrative Determination Under Review ...............................2

    II.    Issues Presented for Review.......................................................2

STATEMENT OF FACTS ...............................................................3

    I.    Legal Framework For Circumvention Inquiries...........................3

    II.    Background And Initiation Of Circumvention Proceeding ............6

    III.    Preliminary Determination..............................................7

    IV.    Final Determination .......................................................12

SUMMARY OF THE ARGUMENT .................................................13

ARGUMENT ...............................................................................14

    I.    Standards Of Review ....................................................14

    II.    The Production Process In Vietnam for Vina And The Non-Responsive Companies Was Minor Or Insignificant ...................15

    III.    Commerce's Finding Of Circumvention On A Country-Wide Basis Is Supported By Substantial Evidence.................................19

CONCLUSION............................................................................28

# TABLE OF AUTHORITIES

**Cases**                **Page(s)**

*Al Ghurair Iron & Steel LLC v. United States*,
  536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023) ............................................................................................ 16, 19

*Atl. Sugar, Ltd. v. United States*,
  744 F.2d 1556 (Fed. Cir. 1984) ..................................................... 15

*Canadian Solar, Inc. v. United States*,
  918 F.3d 909 (Fed. Cir. 2019) ....................................................... 27

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) ...................................................................... 15

*Fine Furniture (Shanghai) Ltd. v. United States*,
  748 F.3d 1365 (Fed. Cir. 2014) ..................................................... 23

*Fujitsu Gen. Ltd. v. United States*,
  88 F.3d 1034 (Fed. Cir. 1996) ....................................................... 14

*Goldlink Indus. Co. v. United States*,
  431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ................................. 15

*HLDS (B) Steel SDN BHD v. United States*,
  No. 21-00638, 2024 WL 244937 (Ct. Int'l Trade Jan. 23, 2024) ................. 18

*INS v. Elias-Zacarias*,
  502 U.S. 478 (1992) ...................................................................... 15

*Lignite Energy Council v. United States EPA*,
  198 F.3d 930 (D.C. Cir. 1999) ......................................................... 4

*NSK Ltd. v. United States*,
  358 F. Supp. 2d 1276 (Ct. Int'l Trade 2005), *aff'd*, 162 F. App'x 982 (Fed. Cir. 2006) ..................................................................................... 19

*PrimeSource Bldg. Prod., Inc. v. United States*,
  111 F.4th 1320 (Fed. Cir. 2024) ............................................... *passim*

*Shelter Forest International Acquisition, Inc. v. United States*,
    497 F.Supp.3d 1388 (Ct. Int'l Trade 2021) ..................................................... 28

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009) ......................................................................................... 14


**Statutes**

19 U.S.C. § 1516a(b) ............................................................................................ 14

19 U.S.C. § 1677j(b) .................................................................................*passim*

19 U.S.C. § 1677f–1(c)...........................................................................17, 22, 26

42 U.S.C. § 7411(a) ................................................................................................ 4

Omnibus Trade Act of 1987, Report of the Senate Finance Committee,
    S. Rep. No. 100-71 (S. Rep.), at 101 (1987) ..................................................... 5

Statement of Administrative Action Accompanying the Uruguay Round
    Agreements Act,
    H.R. Doc. No. 103-316 (SAA), at 893 (1994), *reprinted in* 1994 U.S.C.C.A.N.
    4040 ...................................................................................................*passim*


**Regulations**

19 C.F.R. § 351.225(h) ...................................................................................... 3, 4

19 C.F.R. § 351.226(f) ....................................................................................22, 24

19 C.F.R. § 351.226(m) ....................................................................................6, 19

Other Authorities

*PRELIM Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China,*
87 Fed. Reg. 75,221 (Dep't of Commerce Dec. 8, 2022) ........................... 7, 12

*FINAL Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China,*
88 Fed. Reg. 57,419 (Dep't of Commerce Aug. 23, 2023)................... 2, 12, 13

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China,*
77 Fed. Reg. 73,017 (Dep't of Commerce Dec. 7, 2012) .......................*passim*

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China,*
77 Fed. Reg. 73,018 (Dep't of Commerce Dec. 7, 2012) ................................. 6

*PREM Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China,*
87 Fed. Reg. 19,071 (Dep't of Commerce Apr. 1, 2022) ................................ 6

*Crystalline Silicon Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other Products,*
Inv. No. TA-201-075, Publication 5021 (Feb. 7, 2020) ............................. 7, 8

*Fine Denier Polyester Staple Fiber From the Republic of Korea,*
83 Fed. Reg. 24743 (Dep't of Commerce May 30, 2018) ............................. 25

*Fine Denier Polyester Staple Fiber From Taiwan,*
83 Fed. Reg. 24745 (Dep't of Commerce May 30, 2018)............................. 25

*AB10 Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,*
86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021)....................... 20, 22

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE M. MILLER BAKER, JUDGE

_____

| | |
|---|---|
| TRINA SOLAR (VIETNAM) SCIENCE & TECHNOLOGY CO., LTD., *ET AL.*, ) | |
| Plaintiffs, ) | |
| and ) | |
| FLORIDA POWER & LIGHT CO., ) | |
| Plaintiff-intervenor, ) | |
| v. ) | Court No. 23-00228 |
| UNITED STATES, ) | |
| Defendant, ) | |
| and ) | |
| AUXIN SOLAR INC. ET ANO, ) | |
| Defendant-intervenors. ) | |

_____

DEFENDANT'S OPPOSITION TO PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S RULE 56.2 MOTIONS FOR JUDGMENT ON THE <u>ADMINISTRATIVE RECORD</u>

Defendant, the United States, respectfully responds to the motions for judgment on the administrative record filed by plaintiffs, Trina Solar (Vietnam) Science & Technology Co., Ltd., Trina Solar Energy Development Company Limited, and Trina Solar Co., Ltd. (collectively Trina Vietnam), and

by plaintiff-intervenor, Florida Power & Light Company (FPL).  ECF No. 41

(Trina Br.); ECF No. 43 (FPL Br.).  The Court should sustain the final

determination because it is supported by substantial evidence and is in

accordance with law.

STATEMENT PURSUANT TO RULE 56.2

I.    Administrative Determination Under Review

The administrative determination under review is the final

determination of circumvention of the antidumping and countervailing duty

orders on solar cells from China, issued and published as *Antidumping and*

*Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells,*

*Whether or Not Assembled Into Modules, From the People's Republic of*

*China*, 88 Fed. Reg. 57,419 (Dep't of Commerce Aug. 23, 2023) (final

determination of circumvention) (*Final Determination*), and the Issues and

Decision Memorandum with respect to Vietnam (IDM) (Appx1050-1173).

II.   Issues Presented for Review

1.    Whether Commerce's finding that the overall production process in

      Vietnam is minor or insignificant is supported by substantial evidence.

2.    Whether Commerce's determination to impose its affirmative

      circumvention finding on a country-wide basis is supported by

      substantial evidence and in accordance with law.

STATEMENT OF FACTS

I.    Legal Framework For Circumvention Inquiries

To prevent circumvention of antidumping and countervailing duty

orders, Commerce may include within the scope of an order merchandise

completed in a foreign country other than the order country if certain criteria

are met.  19 U.S.C. § 1677j(b).  Commerce may do so if:

> (A) {the} merchandise imported into the United States is of the same class or kind as any merchandise produced in a foreign country that is the subject of {an order},
>
> (B) before importation into the United States, such imported merchandise is completed or assembled in another foreign country from merchandise which . . . is subject to {the} order . . . or  . . . produced in {a} foreign country . . . to which such order . . . applies,
>
> (C) the process of assembly or completion in the foreign country . . . is minor or insignificant,
>
> (D) the value of the merchandise produced in the foreign country . . . is a significant portion of the total value of the merchandise exported to the United States, and
>
> (E) action is appropriate . . . to prevent evasion of such order.

19 U.S.C. § 1677j(b)(1); *see also* 19 C.F.R. § 351.226(h) (explaining that

Commerce "may include within the scope of an antidumping or

countervailing duty order, at any time such order is in effect, imported

merchandise completed or assembled in a foreign country other than the

country to which the order applies").

3

In determining whether the process of assembly or completion in the third country is "minor or insignificant" under 19 U.S.C. §1677j(b)(1)(C), the statute directs Commerce to "take into account":

> (A) the level of investment in the foreign country,
>
> (B) the level of research and development in the foreign country,
>
> (C) the nature of the production process in the foreign country,
>
> (D) the extent of production facilities in the foreign country, and
>
> (E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2).  No single factor controls.  19 C.F.R. § 351.225(h); Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316 (SAA), at 893 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040.  Additionally, when, as in this case, Congress has prescribed factors but not their relative weight, the agency is granted "a great degree of discretion in balancing them."  *Lignite Energy Council v. United States EPA*, 198 F.3d 930, 933 (D.C. Cir. 1999) (holding that the Environmental Protection Agency was granted discretion to balance factors in 42 U.S.C. § 7411(a)(1) because no one factor was controlling).

The statue identifies additional, non-exhaustive, discretionary factors to consider in weighing whether to find circumvention.  Commerce thus will "take into account such factors as --":

(A) the pattern of trade, including sourcing patterns,

(B) whether the manufacturer or exporter of the merchandise . . . described in {19 U.S.C. § 1677j(b)(1)(B)} is affiliated with the person who uses the merchandise described in {19 U.S.C. § 1677j(b)(1)(B)} to assemble or to complete in the foreign country the merchandise that is subsequently imported into the United States; and

(C) whether imports into the foreign country of the merchandise described in {19 U.S.C. § 1677j(b)(1)(B)} have increased after the initiation of the investigation {that} resulted in the issuance of such order.

19 U.S.C. § 1677j(b)(3).

Congress intended to "authorize {Commerce} to apply . . . orders in such a way as to prevent circumvention and diversion of U.S. law." Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71 (S. Rep.), at 101 (1987). Commerce thus possesses "substantial discretion in interpreting these terms, and invoking these measures, so as to allow it flexibility to apply the provisions in an appropriate matter . . . {and to} use {its} authority "to the fullest extent possible to combat diversion and circumvention of the antidumping and countervailing duty laws." *Id.* at 100.

In conducting circumvention inquiries, Commerce considers the most appropriate remedy to address circumvention and prevent the evasion of an order. 19 C.F.R. § 351.226(m)(1). Among the remedies that Commerce may consider is the application of a determination on a "country-wide basis" to all products from the same country with the same or similar physical

5

characteristics as the product at issue and without regard to the producer or exporter.  19 C.F.R. § 351.226(m)(1)(ii)-(iii).

## II.    Background And Initiation Of Circumvention Proceeding

Commerce issued antidumping and countervailing duty orders on solar products from China.  *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 77 Fed. Reg. 73,018 (Dep't of Commerce Dec. 7, 2012); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 77 Fed. Reg. 73,017 (Dep't of Commerce Dec. 7, 2012) (*Solar Orders*).

Auxin Solar Inc. (Auxin), a domestic producer of solar modules, requested that Commerce initiate a circumvention inquiry to determine whether solar cells and modules from four countries (Cambodia, Malaysia, Thailand, and Vietnam) that use parts and components from China are circumventing the *Solar Orders*.  Appx1239-40.  Auxin requested that Commerce conduct its inquiry on a country-wide basis,  Appx1321-22, and Commerce initiated the requested inquiry.  *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 19,071 (Dep't of Commerce Apr. 1, 2022).  Commerce issued quantity and value (Q&V) questionnaires to 26 companies and also invited companies to which it did not issue questionnaires to respond.  Appx1001 (Preliminary Decision Memorandum, PDM at 2).  Commerce found

6

that eight companies had received but did not respond to the Q&V

questionnaires, and that one company had untimely responded to the Q&V

questionnaire.  Commerce selected Boviet Solar Technology Co., Ltd. (Boviet)

and Vina Solar Technology Company Limited (Vina) as mandatory

respondents.  *Id.*  Trina responded to Commerce's Q&V questionnaire but was

not selected as a mandatory respondent.  *Id.*

III.    Preliminary Determination

Commerce preliminarily found that circumvention was occurring

through Vietnam on a country-wide basis.  *Antidumping and Countervailing*

*Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not*

*Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg.

75,221 (Dep't of Commerce Dec. 8, 2022) (Prelim. Circ. Det.) (*Preliminary*

*Determination*) and accompanying PDM.

Commerce described the general production process for solar modules

in four steps.  First, raw polysilicon is heated, melted, and cooled to form a

polysilicon ingot.  Appx1017-18 (PDM at 18-19) (citing *Crystalline Silicon*

*Photovoltaic Cells, Whether or Not Partially or Fully Assembled Into Other*

*Products*, Inv. No. TA-201-075, Publication 5021 (Feb. 1, 2020) (*ITC Report*)

at I-62).  Second, the ingot is sliced, typically using a diamond wire saw, into

polysilicon wafers.  Appx1018 (PDM at 19) (citing *ITC Report* at I-64).  Third,

polysilicon wafers undergo several chemical treatments, including the

formation of a positive-negative (p/n) junction, which converts the polysilicon wafers into solar cells. *Id.* (citing *ITC Report* at I-65-I-66). Commerce explained that the formation of the p/n junction is the step of the production process at which the solar cell is capable of converting sunlight into electricity and thus defines a cell's country of origin. Appx1018 (PDM at 19). Fourth, solar cells are soldered into strings and placed onto a layer of solar glass and ethyl vinyl acetate (EVA) and covered by another layer of EVA and backsheet. The solar cells are then cured and encased in aluminum frames, and a junction box is attached to create a finished solar module. Appx1018 (PDM at 19) (citing *ITC Report* at I-67).

Commerce preliminarily found that Boviet and Vina performed the third and fourth steps (the cell and module steps) in Vietnam. Appx1014. Commerce also found that solar modules exported by Boviet and Vina are of the same class or kind of merchandise as that subject to the *Solar Orders*, and that they were completed in Vietnam using parts and inputs from China. Appx1011-12 (PDM at 12-13). Commerce also concluded that those parts and inputs are a significant portion of the total value of the completed solar modules exported by Boviet and Vina. Appx1021 (PDM at 22).

Commerce preliminarily determined to apply adverse facts available (AFA) to the nine companies that failed to timely respond to Commerce's Q&V questionnaire. Appx1012 (PDM at 11). Commerce found that, in failing

to timely respond, those companies failed to provide information in the form and manner requested, withheld requested information, and significantly impeded the circumvention inquiry. *Id.* Commerce also found that the non-responsive companies did not act to the best of their ability to comply with Commerce's request for information. *Id.*

Commerce then determined that Vina's process of assembly or completion of solar cells in Vietnam, as well as that of the nine non-responsive companies, was minor or insignificant. Appx1014-16 (PDM at 15-17). Commerce, however, determined that the process of assembly or completion by Boviet in Vietnam was not minor or insignificant. *Id.* Commerce evaluated the five factors identified in 19 U.S.C. § 1677j(b)(2) with respect to production in Vietnam: (A) the level of investment; (B) the level of research and development (R&D); (C) the nature of the production process; (D) the extent of the production process; and (E) the value added as a proportion of the total value of the respondents' U.S. exports of solar cells and modules.

First, under section 1677j(b)(2)(A), Commerce found that Vina's level of investment in Vietnam was minor or insignificant when compared to its affiliated Chinese producers, but that the level of investment by Boviet was not minor or insignificant. Appx1016-17 (PDM at 15-16). Commerce also found, as AFA, that the level of investment in Vietnam of each of the nine

non-responsive companies was minor relative to their levels of investment in China. Appx1015-16 (PDM at 14-15).

Second, turning to subparagraph (B), Commerce found that that Vina's level of R&D was minor or insignificant when compared to the R&D incurred by its affiliates in China, but that the level of R&D carried out by Boviet in Vietnam was not minor or insignificant. Appx1017 (PDM at 18). Commerce also found, as AFA, that the level of R&D of each of the nine non-responsive companies was minor when compared to the levels of R&D of their affiliates in China. *Id.*

Third, under subparagraph (C), Commerce found that the nature of the production process for solar cells and solar modules, which both respondents carried out in Vietnam, was not minor or insignificant when compared to the production process for polysilicon ingots and solar wafers. Appx1017-20 (PDM at 18-21).

Fourth, under subparagraph (D), Commerce found that the extent of Vina's production facilities (including the size, capacity, and number of employees for each company's factories) was minor or insignificant when compared to its Chinese affiliates' production facilities, but that the extent of Boviet's production facilities was not minor or insignificant. Appx1019 (PDM at 20). Commerce also found, as AFA, that the extent of the production facilities of each of the nine non-responsive companies was minor when

compared to the extent of the production facilities of their affiliates in China. Appx1019-20 (PDM at 20-21).

Fifth, turning to subparagraph (E), Commerce found that the value of processing carried out by Boviet and Vina in Vietnam did not represent a small proportion of the total value of each company's exports of solar cells to the U.S. Appx1020 (PDM at 21). However, Commerce found, as AFA, that the value of the processing performed by the nine non-responsive companies in Vietnam represented a small proportion of the total value of each company's exports of solar cells to the U.S. *Id.*

Commerce evaluated the totality of the five 19 U.S.C. § 1677j(b)(2) factors and concluded that the production process in Vietnam for Vina and the nine non-responsive companies was minor or insignificant. Appx1024-25. Commerce explained that it had placed special emphasis on the level of R&D carried out in Vietnam because of the uniquely complex nature of solar cell and module production. Appx1024 (PDM at 25). Commerce also concluded, based on the totality of the five factors, that the production process for Boviet was not minor or insignificant. *Id.*

Taking into consideration those findings as well as the three 19 U.S.C. § 1677j(b)(3) factors, Commerce preliminarily concluded that Vina and the nine non-responsive companies were circumventing the *Solar Orders*. Appx1025 (PDM at 26). Commerce preliminarily found that Boviet was not

circumventing and that Boviet's exports of subject merchandise would not be subject to Commerce's preliminary finding. *Id.* Commerce determined, based on its authority to take the appropriate remedy to address circumvention and prevent the evasion of an order, to apply its determination of circumvention on a country-wide basis throughout Vietnam. Appx1026 (PDM at 27). Commerce thus preliminarily applied an affirmative circumvention determination to all shipments of solar cells subject to the circumvention inquiry. *Id.* Because Commerce had found that Boviet was not circumventing, it preliminarily established a certification process under which Boviet could be excluded from Commerce's affirmative country-wide finding. *Id.*

IV.    <u>Final Determination</u>

After the *Preliminary Determination*, Commerce attempted to verify the information reported by both mandatory respondents. Commerce travelled to Vietnam to verify Vina, which refused to participate in verification. *Final Determination*, 88 Fed. Reg. at 57,420-21. Commerce thus found that, by refusing verification, Vina had significantly impeded the circumvention inquiry and provided information that could not be verified, and that Vina had failed to cooperate to the best of its ability. *Id.* at 57,421. Commerce thus applied facts available with an adverse inference to Vina and continued to find that Vina circumvented the *Solar Orders*. *Id.* Lastly,

Commerce continued to apply an affirmative circumvention determination country-wide. Appx1110-13 (IDM at 61-64).

## SUMMARY OF THE ARGUMENT

Trina and FPL raise two challenges to Commerce's circumvention determination. Neither upsets the agency's reliance on substantial record evidence.

First, Trina and FPL contend that only one of the five factors that Commerce "shall take into account" in its circumvention inquiries compels a negative finding of circumvention. This is wrong. Indeed, plaintiffs cannot discard a presumptively representative mandatory respondent from the agency's analysis, especially when they proffer nothing to rebut this presumption. The fact that Commerce's findings with respect to Vina are based on AFA is of no moment. They are uncontroverted, on the record, and presumptively representative under biding precedent.

Plaintiffs' statutory construction arguments fare no better. In assessing whether the process of assembly or completion in Vietnam was "minor or insignificant" the statute directs Commerce to "take into account" five factors. The plain language of the statute and its legislative history direct that no one factor is dispositive, and moreover, Commerce permissibly gave additional weight to the R&D factor, given its importance to the solar industry.

Second, Commerce issued a country-wide determination based on substantial evidence.  Trina and FPL do not cite the governing regulation under which Commerce makes country-wide circumvention determinations, and they fail to grapple with the substantial record evidence supporting Commerce's determination.  Rather, as with their challenge to the "minor or insignificant" factors, plaintiffs wrongly offer an assumption that the agency's AFA findings cannot be relevant to its determination.

ARGUMENT

## I.    Standard Of Review

The Court sustains Commerce's determinations, findings, or conclusions unless they are unsupported by substantial evidence on the record, or otherwise unlawful.  *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).  Indeed, "{t}he specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).  Substantial evidence connotes "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," taking into account the entire record.  *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (cleaned up).  Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing

14

inconsistent conclusions does not render findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Indeed, when Congress entrusts an agency to administer a statute that demands inherently fact-intensive inquiries, agency conclusions may be set aside only if the record is "so compelling that no reasonable factfinder" could reach the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992). The Court will not substitute its judgment for Commerce's in choosing between two fairly conflicting views, even if it could "justifiably have made a different choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006).

II.    **The Production Process In Vietnam for Vina And The Non-Responsive Companies Was Minor Or Insignificant**

To find that merchandise assembled or completed in a third country circumvents, Commerce must find the third-country production process to be minor or insignificant. 19 U.S.C. § 1677j(b)(1)(C). The statute identifies five factors that Commerce "shall take into account" when determining whether the production process is minor but does not otherwise instruct Commerce in how to evaluate the factors. 19 U.S.C. § 1677j(b)(2). Commerce evaluates the factors "depending on the particular circumvention scenario" and "{n}o single factor will be controlling." SAA at 893. Congress recognized "the need for flexibility in administering this standard." *Al Ghurair Iron & Steel LLC v.*

15

*United States*, 536 F. Supp. 3d 1357, 1375 n.5 (Ct. Int'l Trade 2021) (*Al Ghurair I*), *aff'd,* 65 F.4th 1351 (Fed. Cir. 2023) (quoting S. Rep. 103-412 at 82).

Based on its uncontested AFA findings, Commerce determined that the production process in Vietnam for Vina and the non-responsive companies was minor or insignificant. Appx1100 (IDM at 51). Trina, citing Commerce's finding that the nature of Boviet's production process was not minor or insignificant, contends that "Commerce's analysis of the significance of {} cell and module production compels a negative finding of circumvention." Trina Br. at 21. FPL argues the same. FPL Br. at 12-20.

First and foremost, Trina and FPL appear to contend that determinations based on AFA are not probative. *See e.g.*, Trina Br. at 28; FPL Br. at 5. That is wrong. Indeed, the "mere fact that all mandatory respondents received an AFA rate cannot, in and of itself, undermine the presumption of representativeness." *PrimeSource Bldg. Prod., Inc. v. United States*, 111 F.4th 1320, 1332 (Fed. Cir. 2024). In that administrative review challenge, the Court sustained Commerce's imposition on cooperating non-selected respondents an all-others antidumping duty rate based entirely on AFA, reasoning that the mandatory respondents' failure to cooperate was representative of the entire industry. And like the facts of this case, in which Commerce selected the two respondents with the highest volume of exports,

16

the Court found persuasive the fact that Commerce's "respondent selection process under 19 U.S.C. § 1677f–1(c)(2) supports the presumption of representativeness based on exporters' volume, not the results of Commerce's dumping margin analysis." *Id.*

Then discarding Commerce's findings regarding Vina as unrepresentative, plaintiffs maintain that Commerce's overall determination with respect to the five factors under 19 U.S.C. § 1677j(b)(2) for determining whether the process of assembly or completion in the third country is "minor or insignificant" for purposes of 19 U.S.C. § 1677j(b)(1)(C) should be overridden solely by Commerce's finding with respect to the "nature of the production process," the third of the five factors.  Trina Br. at 22 ("Regardless of any company-specific AFA findings, the significance of {the nature of the production process} demonstrates that Commerce's entire affirmative circumvention determination is fundamentally incongruent and is unsupported by substantial evidence."); *see also* FPL Br. at 8-9.  But neither cites any legal authority for this novel statutory interpretation, other than a brief inapposite passage from the SAA.  Trina Br. at 22 (citing SAA at 893-4).

Trina misapprehends the SAA, because the statute itself identifies the factors that Commerce shall take into account, and the SAA directs that "{n}o single factor will be controlling."  SAA at 893.  The fact that the SAA contains the term "screwdriver" operation, as an illustrative example, does not limit

17

the statutory definition of "minor or insignificant."  Rather, "the SAA's reference to "screwdriver assembly operations" plainly alludes to production operations in a third country that are 'minor or insignificant.'"  *HLDS (B) Steel SDN BHD v. United States,* No. 21-00638, 2024 WL 244937, at *4 n.7 (Ct. Int'l Trade Jan. 23, 2024) (citing 19 U.S.C. § 1677j(b)(1)(C)).

Accordingly, Commerce satisfied its statutory obligation to take into account the statutory factors to determine that the overall production process in Vietnam was minor for Vina and for the non-responsive companies.  Appx 1024-25 (PDM at 25-26).  The selective interpretation of the terms "minor," "insignificant," and "screwdriver operation," with the latter not appearing in 19 U.S.C. § 1677j(b)(1)(C) or 1677j(b)(2), cannot overcome the statute.  To the extent that Trina and FPL contend that the nature of the production process should take precedence over the other factors, such an argument would plainly contradict congressional intent that "{n}o single factor will be controlling."  SAA at 893.

Trina also asserts that Commerce failed to explain why it made an affirmative circumvention determination when it also found that the nature of Boviet's production process for solar cells in Vietnam was not minor.  Trina Br. at 26-28.  But Commerce explained that its practice is "to evaluate each of the {minor or insignificant factors} as it exists in the third country and

18

consider the totality of our analysis of those factors in making a

determination." Appx1015 (PDM at 16).

In sum, Trina's and FPL's assertion that Commerce should disregard

four of the 19 U.S.C. §1677j(b)(2) factors in favor of the nature of the

production process lacks support.  19 U.S.C. §1677j(b)(2); SAA at 893 ("No

single factor will be controlling.").  Rather, so long as Commerce provides a

reasoned explanation, Commerce's weighing of the five factors should be

sustained.  Commerce explained that it evaluates all five factors together,

and that, due to the technologically demanding nature of solar cell production

and development it accorded particular weight to the R&D factor, and not the

nature of the production process.  In sum, Commerce's choice of methodology

with respect to the minor or insignificant factors is reasonable and should be

sustained.  SAA at 893; *Al Ghurair I*, 536 F. Supp. 3d at 1374 (quoting *NSK*

*Ltd. v. United States*, 358 F. Supp. 2d 1276, 1291 (Ct. Int'l Trade 2005), *aff'd*,

162 F. App'x 982 (Fed. Cir. 2006)).

III.    Commerce's Finding Of Circumvention On A Country-Wide Basis Is
        Supported By Substantial Evidence

Commerce possesses broad discretion to "consider, based on the

available record evidence, the appropriate remedy to address circumvention

and to prevent evasion of the order." 19 C.F.R. § 351.226(m)(1).  "For

example, if Commerce determines that more than one producer or exporter

19

has consistently altered merchandise related to a single case, such a

conclusion might lead Commerce to apply a 'similar product' remedy to the

country as a whole, regardless of producers, exporters, or importers."

*Regulations To Improve Administration and Enforcement of Antidumping*

*and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,353 (Dep't of

Commerce Sept. 20, 2021) (*AB10 Preamble*).  "Likewise, Commerce might

decide to apply a certification requirement . . . alongside a country-wide

determination that covers the same products or a country-wide determination

that covers similar products."  *Id*.  And "the most important factor is that

Commerce has the flexibility to apply a remedy in accordance with a

circumvention determination on a case-by-case basis."  *Id*.

Commerce initiated its inquiry on a country-wide basis, in accordance

with evidence included with Auxin's allegation.  Appx13617-19 (Initiation

Memo at 14-16); *see also* Appx1281-92 (Circumvention Request at 43-54,

identifying Chinese operations in Vietnam); Appx1327-34 (listing of exhibits

supporting initiation request).  Commerce found:

> Information provided by Auxin indicates that multiple companies in
> Cambodia, Malaysia, Thailand, and Vietnam, rather than a single
> company, have the facilities necessary to conduct the processing in
> question and that subsidiaries of Chinese companies that are located in
> these countries source numerous solar cell and panel inputs from
> China.

Appx13618 (Initiation Memo at 15) (citations omitted).  Auxin provided a

detailed narrative identifying numerous Chinese entities that conducted

manufacturing operations in Vietnam.  Appx1281-92 (Circumvention Request

at 43-54); *see also* Appx1335 (import statistics showing increase in imports

since *Solar Orders*); Appx1368-70 (listing of Vietnamese affiliates of Chinese

producers); Appx1400-26 (Bloomberg article re solar market); Appx1488,

Appx2117-20 (excerpt from datamyne.com import data spreadsheet);

Appx2761 (Canadian Solar list of affiliates); Appx2788 (JinkoSolar

subsidiaries from financial statement); Appx2809-14 (PV Pulse listing of

solar companies); Appx2866-71 (articles regarding Trina's operations in

Vietnam); Appx2992-98 (articles re LONGi acquisition of Vina); Appx3007-15

(articles re Trina investments in Vietnam); Appx3017 (CGL's "assets

extended {to} Southeast Asia" and the company "is always following the

guidance of CPC {Communist Party of China} and promoting green

development by virtue of its red genes.  Meanwhile, GCL Group would like to

implement the new development concept in the light of Xi Jinping's guiding

philosophy for socialism with Chinese characteristics in new era"); Appx3057-

65 (excerpt from Green Energy Solar web page); Appx3066-77 (excerpt from

GreenWing web page); Appx319-32 (article re ET Solar expansion to Vietnam

from China).

Indeed, this uncontroverted record evidence establishes that multiple Chinese solar manufacturers had set up shop in Vietnam and were consistently exporting solar products from Vietnam. *AB10 Preamble*, 86 Fed. Reg. at 52,353. At this point, the Court's inquiry on this issue should be complete. Rather than confront the regulation and Commerce's exercise of its broad discretion consistent with *AB10 Preamble*, plaintiffs decline even to cite these authorities.

And keeping in mind that it was conducting its inquiry on a country-wide basis, Commerce selected respondents consistent with 19 C.F.R. § 351.226(f)(3), which provides that Commerce "may limit issuance of questionnaires to a reasonable number of respondents." Appx5812-13 (Respondent Selection Memo at 4-5). Although the statute does not direct Commerce on how to select companies for individual examination in a circumvention inquiry, Commerce sought guidance from the provision that governs the selection of respondents in antidumping proceedings. Appx5817-18 (Respondent Selection Memo at 8-9); *see also AB10 Preamble*, 86 Fed. Reg. at 52,341 ("{I}n consideration of Commerce's authority to limit respondents under {19 U.S.C. § 1677f-1(c)(2)}, . . . we may limit the issuance of questionnaires to a reasonable number of respondents."). Commerce based its selection of respondents on the timely Q&V responses it received, and consistent with its practice, selected the two exporters that accounted for the

22

largest quantity of solar cells from Vietnam, which were Boviet and Vina. Appx5817-21 (Respondent Selection Memo at 8-12).

Because Vina refused to allow Commerce to verify its questionnaire responses, Commerce applied AFA to find that Vina, along with nine companies that did not respond to Commerce's Q&V questionnaire, had circumvented the *Solar Orders*. Appx1111 (IDM at 62). Commerce found that the companies to which it applied AFA collectively accounted for a significant volume of Vietnamese solar cell exports. *Id.* Therefore, Commerce determined that, based on the totality of its inquiry, and notwithstanding its finding that one company, Boviet, was not circumventing the *Solar Orders*, a country-wide finding of circumvention was warranted. *Id.*

Commerce also found country-wide application appropriate, because the AFA statute "was intended to induce cooperation by ensuring that uncooperative parties do not benefit from their lack of cooperation." Appx1112 (IDM at 63); *see also Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014) (purpose of the AFA statute is "to encourage future cooperation by 'ensuring that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully.'") (cleaned up) (quoting SAA at 870). Commerce explained that failing to apply AFA to Vina and the non-responsive companies would "undermine Commerce's authority to conduct circumvention inquiries, because large

23

third-country producers could refuse to cooperate with Commerce's requests for information and nonetheless benefit from a negative country-wide determination." Appx1112 (IDM at 63).

Trina and FPL suggest that Commerce erroneously applied its country-wide circumvention determination to non-selected companies. Trina Br. at 33-40; FPL Br. at 20-25. But neither provides any legal support for their position. Commerce's determination to make a country-wide circumvention determination, as established above, is based on substantial evidence. Trina and FPL both characterize Commerce as applying AFA to cooperative parties, but they misconstrue Commerce's finding. In a circumvention inquiry, Commerce lacks the ability to examine every importer individually, and the regulations permit Commerce to limit its inquiry to a reasonable number of exporters. Appx5812-13 (Respondent Selection Memo at 4-5) (citing 19 C.F.R. § 351.226(f)(3)). Therefore, pursuant to its practice and regulations, Commerce made a country-wide circumvention determination based on the totality of the information gathered in this inquiry.

Because Vina and Boviet were the companies subject to individual examination, Trina's cooperation is irrelevant. The situation is analogous to a situation in which an antidumping or countervailing duty order is imposed as a result of one exporter/producer's non-cooperation with an antidumping duty investigation. Appx1113 (IDM at 64) (citing *Fine Denier Polyester*

*Staple Fiber From Taiwan*, 83 Fed. Reg. 24745, 24756 (Dep't of Commerce May 30, 2018) (final affirmative antidumping det.); *Fine Denier Polyester Staple Fiber From the Republic of Korea*, 83 Fed. Reg. 24743 (Dep't of Commerce May 30, 2018) (final affirmative antidumping det.)).

Trina Vietnam argues that Commerce made "no company-specific findings" regarding whether the companies to which Commerce applied AFA were circumventing the *Solar Orders*.  Trina Br. at 38.  Trina also disputes Commerce's finding that multiple firms in Vietnam circumvented the *Solar Orders*. *Id.*  FPL alleges that "Commerce's AFA-based determination with respect to {Vina} and the non-cooperative companies was not grounded in Commerce's evaluation of the factual record."  FPL Br. at 22.  This incorrectly implies that Commerce's AFA-based determinations should carry less weight than determinations made without resort to a factual inference.

Indeed, Commerce made a preliminary "company-specific" determination that Vina circumvented the order.  Appx1025 (PDM at 26).  Vina's refusal to allow Commerce to verify its responses frustrated Commerce's ability to confirm that information.  Similarly, the non-responsive companies' failure to respond to Commerce's requests for information frustrated Commerce's ability to select them for individual examination and to determine whether those companies were circumventing.  Commerce should not be precluded from applying a country-wide finding

based on the application of an AFA to those companies, especially in this case when no party contests whether an adverse inference is warranted. Second-guessing Commerce's ability to do so by compelling a negative country-wide circumvention finding would unduly benefit the non-cooperating companies, undermine Commerce's investigative authority, and therefore frustrate the intent of Congress in promulgating the AFA statute. Appx1112 (IDM at 63); *see also* SAA at 870.

Trina's and FLP's arguments all boil down to a contention that determinations based on AFA are not representative of the subject market. Of course, the Federal Circuit readily disposed of that contention, finding no error in the imposition of antidumping duties against cooperating non-selected respondents at a rate based entirely on AFA. The Court explained that the "mere fact that all mandatory respondents received an AFA rate cannot, in and of itself, undermine the presumption of representativeness." *PrimeSource*, 111 F.4th at 1332. Indeed, in that case, the Court found persuasive the fact that Commerce's "respondent selection process under 19 U.S.C. § 1677f–1(c)(2) supports the presumption of representativeness based on exporters' volume, not the results of Commerce's dumping margin analysis." *Id.*

And unlike *PrimeSource*, plaintiffs are not without recourse if they were to establish that their (or their suppliers') exports do not contain

26

Chinese inputs. Although cooperative exporters and their United States importers may avail themselves of the certification process for duty-free entry in this case, in *PrimeSource*, the Court conclusively sustained the assessment of AFA-based antidumping duties against cooperating non-selected respondents. *Id.*

Moreover, Trina's assertion at page 36 of its brief that Commerce could have applied its affirmative circumvention findings on a company-specific basis fails to rebut Auxin's allegation of country-wide circumvention and the facts on the record. Commerce found, based on Auxin's unrebutted evidence, that multiple companies in Vietnam had the facilities necessary to carry out circumventing behavior in Vietnam. Appx13617-19 (Initiation Memo at 14-16); Appx1111 (IDM at 62). Given that a significant volume of Vietnamese exporters were found to be circumventing, it would be unreasonable for Commerce to resort to a series of company-specific findings because Commerce would likely be required to evaluate similar circumventing behavior in the future. Indeed, such company-specific findings unnecessarily require "Commerce to engage in a game of whack-a-mole when it may reasonably define the class or kind of merchandise in a single set of orders." *Canadian Solar, Inc. v. United States*, 918 F.3d 909, 921-22 (Fed. Cir. 2019) (addressing company specific scope rulings). Likewise, Commerce determined that circumvention is occurring on a country-wide basis in a

27

single determination, so that it would not need to repeatedly make company-specific determinations on the same merchandise from the same country.

Finally, Trina contends that "Commerce's application of an AFA-based country-wide antidumping cash deposit rate was inconsistent with the remedial nature of the circumvention statute." Trina Br. at 37 (citing *Shelter Forest International Acquisition, Inc. v. United States*, 497 F.Supp.3d 1388, 1403 (Ct. Int'l Trade 2021)). But *Shelter Forest* is inapposite. Shelter Forest challenged Commerce's application of the China-wide cash deposit rate to cooperative companies as a result of an AFA-based country wide finding. *Shelter Forest*, 497 F.Supp.3d at 1402. The Court ordered Commerce to "provide Plaintiffs with an opportunity to demonstrate whether they qualify for a rate that is not derived from an AFA rate or otherwise explain why it is permissible not to provide Plaintiffs with this opportunity." *Id.* at 1403. Therefore, the issue in *Shelter Forest* was not Commerce's country-wide determination, but the resultant China-wide rate applied to the company. In any event, the Federal Circuit's recent *PrimeSource* decision calls *Shelter Forest*'s persuasiveness into question. And even if *Shelter Forest* were pertinent, Commerce granted cooperative respondents the opportunity either to establish eligibility for rates separate from the China-wide rate or to complete certifications such that cash deposits would not be required. Appx1112 (IDM at 63).

28

<u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain the
final determination and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

/s/  REGINALD T. BLADES, Jr.
Assistant Director

OF COUNSEL:                    /s/ STEPHEN C. TOSINI
Spencer Neff                   Senior Trial Counsel
Attorney                       Department of Justice
Office of the Chief Counsel    Civil Division
  for Trade enforcement      Commercial Litigation Branch
  and Compliance             P.O. Box 480, Ben Franklin Station
U.S. Department of Commerce    Washington, D.C. 20044
                               Tel.: (202) 616-5196
                               Email:  stephen.tosini@usdoj.gov

October 21, 2024              Attorneys for Defendant

<u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 5,865 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ Stephen C. Tosini</u>