**Slip Op. 25-62**

**UNITED STATES
COURT OF INTERNATIONAL TRADE**

────────────

**Court No. 23-00228**

────────────

TRINA SOLAR (VIETNAM) SCIENCE &
TECHNOLOGY CO., LTD.; TRINA SOLAR ENERGY
DEVELOPMENT COMPANY LIMITED; and
TRINA SOLAR CO., LTD.,

*Plaintiffs,*

and

FLORIDA POWER & LIGHT COMPANY,

*Plaintiff-Intervenor,*

v.

UNITED STATES,

*Defendant,*

and

AUXIN SOLAR INC. and FIRST SOLAR VIETNAM
MANUFACTURING CO., LTD.,

*Defendant-Intervenors.*

────────────

Before: M. Miller Baker, Judge

**OPINION**

[Remanding the Department of Commerce's circum-
vention determination.]

Dated: May 19, 2025

*Jonathan M. Freed* and *MacKensie R. Sugama*, Trade Pacific PLLC, Washington, DC, on the briefs for Plaintiffs.

*Matthew R. Nicely*, *Daniel M. Witkowski*, and *Julia K. Eppard*, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, on the briefs for Plaintiff-Intervenor.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *Reginald T. Blades, Jr.*, Assistant Director; and *Stephen C. Tosini*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, on the brief for Defendant.

*Baker*, Judge: This is the third in a trilogy of challenges to the Department of Commerce's finding that solar cell imports from Southeast Asia—here, Vietnam—circumvent antidumping and countervailing duty orders on such equipment made in China. For the reasons explained below, the court remands for reconsideration.

I

The court's companion opinions in cases involving imports of solar cells from Thailand and Cambodia provide a full discussion of the statutory backdrop in circumvention cases.[1] The relevant aspect here is

---

[1] *See generally Canadian Solar Int'l Ltd. v. United States*, Ct. Nos. 23-00222 and 23-00227, Slip Op. 25-59, 2025 WL 1420317 (CIT May 16, 2025) (Thailand); *BYD (H.K.) Co. v. United States*, Ct. No. 23-00221, Slip Op. 25-60, 2025 WL 1420318 (CIT May 16, 2025) (Cambodia).

whether the "process of assembly or completion" of so-
lar cells in Vietnam is "minor or insignificant" for pur-
poses of 19 U.S.C. § 1677j(b)(1)(C). In deciding that
question, the statute requires the Department to "take
into account" five factors. *See* 19 U.S.C.
§ 1677j(b)(2)(A)–(E); *see also Canadian Solar*, Slip Op.
25-59, at 5–6, 2025 WL 1420317, at *2. "Commerce
will evaluate each of these factors . . . , depending on
the particular circumvention scenario. No single [one]
will be controlling." *Statement of Administrative Ac-
tion Accompanying the Uruguay Round Agreements
Act* (SAA), H.R. Doc. 103–316, vol. 1, at 893, 1994
U.S.C.C.A.N. 4040, 4216.[2]

## II

In 2012, Commerce issued orders imposing anti-
dumping and countervailing duties on solar cells made
in China.[3] *See* 77 Fed. Reg. 73,018; 77 Fed. Reg.

---

[2] The SAA is an "authoritative expression" of the statute's
meaning. 19 U.S.C. § 3512(d).

[3] In technical jargon, the orders cover "crystalline silicon
photovoltaic cells, . . . whether or not partially or fully as-
sembled into other products, including, but not limited to,
modules, laminates, panels and building integrated mate-
rials." Appx1004–1005. According to the Energy Depart-
ment, a solar cell "is a nonmechanical device that converts
sunlight directly into electricity." https://www.eia.gov/en-
ergyexplained/solar/photovoltaics-and-electricity.php. "In-
dividual cells can vary from 0.5 inches to about 4.0 inches
across." *Id*. One such cell "can only produce 1 or 2 Watts,
which is only enough electricity for small uses, such as
powering calculators or wristwatches." *Id*. Cells can be
"electrically connected in a packaged, weather-tight . . .

73,017. Ten years later, domestic producer Auxin Solar Inc. asked the Department to investigate whether such merchandise imported from Thailand, Cambodia, Vietnam, and Malaysia violated those orders. *See* 87 Fed. Reg. 19,071.

The agency did so. For Vietnam, it used Customs data and information in Auxin's circumvention petition to identify the 26 largest exporters and producers of solar cells. Appx1001. It then sent them questionnaires about their U.S. sales and Chinese inputs from 2016 to 2021. *Id.* Thirteen timely responded.[4] *Id.* Nine unsolicited companies voluntarily did so as well. *Id.* Finding it impracticable to examine this menagerie, the Department selected two mandatory respondents—Boviet Solar Technology Co. and Vina Solar Technology Co.—to answer more detailed questionnaires. *Id.*; *see also* Appx5809–5814. Both did so. Appx1001.

A

Commerce's preliminary determination found that Boviet's process of assembly or completion of solar cells in Vietnam was not minor or insignificant. Appx1024.[5] But its provisional reprieve from a

---

*panel* (sometimes called a *module*)." *Id.* (emphasis in original). In plain English, a solar panel is an assembly of linked solar cells.

[4] Eight others declined to respond. *Id.* Four questionnaires were not delivered and one response was untimely. *Id.*

[5] The agency found that all five § 1677j(b)(2) factors weighed against circumvention. *See* Appx1015–1022.

circumvention determination was limited to its exports "produced with wafers [supplied] by . . . specific [non-affiliated Chinese] companies." Appx1025.

Vina was not so lucky. Relying mainly on the lack of R&D in Vietnam, which was vital "[g]iven the uniquely complex nature of solar cell and module production," the Department determined that its process of assembly was minor and insignificant. Appx1024. This was despite its finding that the nature of solar cell production was consequential. Appx1020. As all the other relevant conditions were satisfied, *see* 19 U.S.C. § 1677j(b)(1), the agency provisionally concluded that Vina was guilty of circumvention. Appx1025.

The eight uncooperative entities suffered the same fate, but for different reasons. As the Department had no information on them, it applied "facts otherwise available with an adverse inference," *see* Appx1012–1013, referred to here as "adverse facts available." In short, the agency assumed the worst and presumed circumvention. *See Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321, 1336–39 (CIT 2020) (explaining the two-step "adverse facts available" analysis).

That left what to do with the 20 remaining Vietnamese companies that timely responded—voluntarily or otherwise—to Commerce's initial questionnaire. Because the Department could not examine them, it found that a "country-wide determination" was appropriate. Appx1025–1026 (citing 19 C.F.R. § 351.226(m)(1)). It used the findings applicable to

Vina and the uncooperative entities, because together they "account[ed] for a significant volume of solar cells and modules exported from Vietnam to the United States." Appx1026.

But the agency did offer the unexamined cooperating companies an escape hatch. If they could certify that their solar cells did not use certain critical Chinese-made components, they could avoid circumvention duties. *Id.*

B

After issuing its preliminary determination, Commerce sought to verify Boviet's and Vina's questionnaire responses. The former cooperated and the Department ultimately reaffirmed that the company did not circumvent the orders because its process of assembly or completion was not minor or insignificant— once again based on a negative determination for all five § 1677j(b)(2) factors. *See* Appx1085–1100.[6] But once again, Boviet's exoneration was limited to solar cells made with wafers produced by specific, non-affiliated Chinese producers. Appx1101.

Vina, on the other hand, took its marbles and went home, refusing to cooperate with Commerce's attempt

---

[6] Commerce explained that because Boviet "did not have any upstream input affiliates in China," the agency did "not compare the level of investment, R&D, and extent of production facilities in Vietnam to facilities in China." Appx1073–1074. Auxin unsuccessfully opposed this "affiliate-centric" analysis and instead argued for a "merchandise-centric" examination. *See* Appx1075.

to verify its submissions. Appx1217. The Department (predictably) applied adverse facts available to the company as well as the other uncooperative entities. Appx1218. It did so, however, only as to three of the § 1677j(b)(2) factors, meaning that they were presumed to indicate circumvention. *See* Appx1085–1087 (level of investment); Appx1087 (R&D); Appx1096–1097 (value of processing).

In an apparent oversight, Commerce made no finding about the extent of production facilities on the part of Vina or any other company, save for Boviet. *See* Appx1095–1096. As to the remaining factor, the nature of production, the agency found in the negative as to Vina and *all* other Vietnamese companies based on record facts. Appx1087–1094. This was because "the multi-step solar cell and solar module production process requires sophisticated, precise, and technologically advanced equipment, and a skilled workforce." Appx1094.

The Department then announced—without any discussion of how (if at all) it balanced its § 1677j(b)(2) findings—that "the process of assembly or completion" for Vina and the other uncooperative companies was "minor or insignificant." Appx1100; 19 U.S.C. § 1677j(b)(1)(C). It explained that it did so because no party argued against application of adverse facts available to these entities. *Id.* And a few pages later, it appeared to suggest that this step was automatically dispositive as to "whether the process of assembling and completing Chinese components into solar cells and modules in Vietnam is, or is not, minor or insignificant." Appx1112.

Ct. No. 23-00228                                          **Page 8**

The Department also found that the other relevant statutory conditions were satisfied. Appx1101. It therefore determined that "the non-responsive firms . . . , including Vina, are circumventing the Orders." Appx1101–1102.

That left the fate of the 20 unexamined *cooperating* companies. Vietnamese producer Trina Solar and its affiliates (collectively Trina) and domestic importer Florida Power & Light Company (FPL) argued Commerce should make a country-wide negative determination based on its exoneration of Boviet and its finding—for *all* entities, cooperating or otherwise—that the nature of the process of assembly or completion of solar cells in Vietnam was significant. Appx1109. They also contended that the statute, court decisions, and agency regulations do not allow the Department to apply adverse facts available to cooperating entities. *Id.*

Responding to these contentions, Commerce explained that Boviet's exoneration only applied to the latter's "exports of inquiry merchandise produced with wafers exported by the specific party reported in its questionnaire responses." Appx1110. As a result, the company's exports would still be covered by the Department's "country-wide affirmative circumvention determination" if it used a Chinese wafer supplier different from "the one that it reported." *Id.*

In any event, the agency found that relying on "the narrow negative wafer-[supplier] specific circumvention determination for Boviet" to provide the country-wide result "would not be appropriate." Appx1111. That's because "Commerce made affirmative . . .

determinations" for Vina and eight other uncooperative entities, which collectively "accounted for a significant volume of Vietnamese solar cells." *Id.* The agency "cannot limit its decision solely to the results of its analysis of the individually examined respondents, but must consider the entire results of its inquiry." *Id.* As those results showed that "multiple firms in Vietnam are circumventing the Orders," it "continued to reach a country-wide affirmative circumvention determination" applicable to the unexamined cooperating companies. *Id.*

The Department also disagreed that it applied adverse facts available "to cooperative companies by issuing a country-wide affirmative circumvention determination." Appx1112. Instead, it only did so for "uncooperative companies." *Id.* Moreover, its country-wide determination "placed the cooperative companies in a different position than" their uncooperative brethren. *Id.* The former group—unlike the latter—could avoid duties by certifying that they did not use key Chinese components. *Id.*

### III

Invoking subject-matter jurisdiction conferred by 28 U.S.C. § 1581(c), Trina brought this suit under 19 U.S.C. § 1516a(a)(2)(B)(i) to challenge the Department's final determination. FPL intervened as a plaintiff. ECF 30.[7] The parties have fully briefed Trina's

---

[7] Two other companies intervened as defendants—Auxin and foreign producer First Solar Vietnam Manufacturing Co., Ltd. Neither filed a brief.

and FPL's motions for judgment on the agency record, which are ripe for disposition.

In § 1516a(a)(2) actions such as this, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The question is not whether the court would have reached the same decision on the same record. Rather, it is whether the administrative record as a whole permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up); *see also SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 382 (Fed. Cir. 1983) (if Commerce makes a choice between "two fairly conflicting views," the court may not substitute its judgment even if its view would have been different "had the matter been before it *de novo*") (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

IV

Trina and FPL mount two attacks. First, they challenge the Department's finding that the process of assembly or completion by Vina and the other uncooperative companies is "minor or insignificant." ECF 42, at 18–19 (Trina, citing Appx1090–1094); ECF 43, at 5 (FPL). Second, they argue that even if that finding stands, basing the country-wide determination on it was unlawful because the net effect was to apply an adverse inference to cooperating entities. ECF 42, at 29; ECF 43, at 6. The court addresses these questions in turn.

A

Trina emphasizes—correctly—that the Department must return affirmative results on all five statutory conditions under 19 U.S.C. § 1677j(b)(1) to find circumvention. ECF 42, at 19. The company then turns to the only one disputed here—whether the process of assembly or completion in the third country is "minor or insignificant," *see* § 1677j(b)(1)(C)—notes its five factors, *see* § 1677j(b)(2), and asserts that the "nature of the production process" "compels" a negative circumvention finding. ECF 42, at 21–22. "[T]he significance of this finding demonstrates that Commerce's entire circumvention determination is fundamentally incongruent and is unsupported by substantial evidence." *Id.* at 22.

Trina asserts that the key to this issue is the SAA's reference to "screwdriver operations": "If it is easy to set up manufacturing capabilities in a third country, it is relatively easy to move production to other

countries as a means to evade . . . ." *Id.* But if the production process is "significant, extensive, and capital intensive, it is much more difficult to demonstrate that manufacturing was established in the third country as a means to circumvent . . . ." *Id.* at 23. "In other words, if a manufacturing process is so extensive and complex, such [as] is the case with [solar] cells and modules, it logically cannot also be found to be circumventing . . . ." *Id.*[8]

Trina complains that the Department side-stepped these arguments and summarily found the process of assembly or completion to be minor based on adverse facts available. *See* ECF 42, at 26–27. It contends that "Commerce cannot hide behind the company-specific AFA applied elsewhere in its decision" and "ignore arguments raised by interested parties." *Id.* at 27.

The court agrees. The Department arbitrarily treated its adverse facts available finding as the administrative equivalent of landing on "Go to Jail." While it's undisputed that Commerce properly found in the affirmative for three of the § 1677j(b)(2) factors grounded on that doctrine, it didn't weigh those findings against its negative conclusion—based on record facts—as to the "nature of the production process." And it skipped making *any* finding about the "extent of production," save for Boviet. Reasoned decision making required addressing every factor, balancing

---

[8] FPL makes essentially the same argument. *See* ECF 43, at 10–12.

them, and responding to the parties' arguments. As
that didn't happen here, remand is necessary.

## B

Trina and FPL alternatively argue that even if
Commerce properly found—or properly finds on re-
mand—that the process of assembly or completion in
Vietnam by Vina and the other uncooperative compa-
nies is minor or insignificant, the Department cannot
rest its *country-wide* determination on that finding be-
cause it's partially based on adverse facts available.
*See* ECF 42, at 33–40 (Trina); ECF 43, at 20–25 (FPL).
Instead, FPL contends—as both it and Trina argued
before the agency, *see* Appx1109—that Commerce
should have made a country-wide negative determina-
tion based on its exoneration of Boviet[9] and its finding
that the nature of the process of assembly or comple-
tion of solar cells in Vietnam was significant. *See*
ECF 48, at 10.[10]

Trina notes that before Commerce can apply an ad-
verse inference, the statute requires it find that "an
interested party has failed to cooperate by not acting
to the best of its ability" to comply with a request for
information. ECF 42, at 30–31 (quoting 19 U.S.C.
§ 1677e(b)(1)). If the agency makes that threshold find-
ing, it may "use an inference that is adverse to the in-
terests of *that party* in selecting from among the facts

---

[9] FPL fails to note that Boviet's exoneration was qualified.

[10] Although Trina does not speak to this question, the court
presumes that its position is the same as it was before the
agency.

otherwise available." *Id.* at 31 (emphasis in original) (quoting 19 U.S.C. § 1677e(b)(1)(A)). The company argues the Department exceeded the statute's limits by applying an adverse inference to the *cooperating* parties. FPL echoes these arguments. *See* ECF 43, at 20–23.

The court disagrees. Trina acknowledges that the statute "provides no guidance to Commerce on how to assign circumvention determinations to un-examined companies. Instead, [the Department] may, based on substantial evidence, select an appropriate remedy pursuant to 19 C.F.R. § 351.226(m)." ECF 47, at 14. That regulation provides that such remedies "to address circumvention and to prevent evasion . . . . may include . . . [t]he application of the determination on a country-wide basis to all products from the same country as the product at issue with the same relevant physical characteristics, . . . regardless of producer, exporter, or importer of those products." 19 C.F.R. § 351.226(m)(1)(ii).[11]

---

[11] Remedies may also include "[t]he application of the determination on a producer-specific, exporter-specific, [or] importer-specific basis, or some combination thereof." *Id.* § 351.226(m)(1)(i). There is no dispute, nor could there be, that the regulation allows the Department to apply its circumvention determinations—as was done here—on an entity-specific basis to certain companies and a country-wide basis as to all others. That is, Commerce may combine the remedies specified in § 351.226(m)(1)'s four subparagraphs. *See id.* § 351.226(m)(1)(iii) (using "and" to tie subparagraphs (iii) and (iv)).

As to the unexamined cooperating companies, it's undisputed that on this record Commerce had two options—treat them either like Boviet or the uncooperative entities. (More on this important point in a moment.) The agency reasonably explained why it chose the latter. The uncooperative companies "accounted for a significant volume of Vietnamese solar cells." Appx1111. The agency "cannot limit its decision solely to the results of its analysis of the individually examined respondents, but must consider the entire results of its inquiry." *Id*.

In so reasoning, Commerce did not violate 19 U.S.C. § 1677e(b)(1)(A) because it did not apply an adverse inference to the unexamined cooperating companies. It instead reasonably extended the circumvention remedy to them under 19 C.F.R. § 351.226(m) because the noncooperating entities "accounted for a significant volume of Vietnamese solar cells." Appx1111. The limitations on using antidumping margins based on adverse facts available to calculate duties for cooperating entities are simply irrelevant in the circumvention remedy context. *Cf. Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378–79 (Fed. Cir. 2013).

In any event, the Department's remedy here obviates the concerns that animate those limitations even if they are otherwise applicable. The *uncooperative* entities cannot avoid duties applicable to Chinese solar cells. But, as explained above, Trina and the other cooperating, unexamined companies can do so by certifying that they did not use critical Chinese-made components. *See* Appx1112; *see also* Appx1228. That

escape hatch alone defeats Trina's and FPL's reliance on caselaw—even if it applies by analogy in this circumvention remedy context—limiting the extent to which cooperating companies can suffer the same fate as their noncooperating peers.

Finally, the court notes the dog that didn't bark—the conspicuous failure by Trina and FPL to contend that Commerce should have treated the unexamined cooperating companies *exactly* like Boviet. Recall it eludes circumvention duties only when it certifies that it used components produced "by the specific party reported in its questionnaire responses." Appx1110. Otherwise, as the Department explained, its exports are bound by the orders. *Id.*

That's not what Trina and FPL appear to want. Instead, they apparently seek an unqualified negative determination for the unexamined cooperating companies, based on the Department's finding that the nature of the process of assembly or completion of solar cells by *all* companies in Vietnam was significant. But they don't dispute that at the remedy stage, the agency simply didn't have that option on this record. That's because there were only two possible templates to use for a country-wide determination—either Boviet's or the uncooperative entities'. Commerce reasonably chose the latter because it captured a greater share of exports from Vietnam.

And contrary to Trina's and FPL's argument, the § 1677j(b)(2) factors such as the nature of the process of assembly or completion have no bearing on the Department's determination of a remedy under 19 C.F.R.

§ 351.226(m). Instead, they are only relevant to an antecedent question—whether the "process of assembly or completion" of solar cells in Vietnam is "minor or insignificant" for purposes of 19 U.S.C. § 1677j(b)(1)(C). Only after the agency finds that this and the other conditions of § 1677j(b)(1) are satisfied as to investigated and uncooperative entities—and even then only after it has taken into account the considerations identified in § 1677j(b)(3), *see Canadian Solar*, Slip Op. 25-59, at 16, 2025 WL 1420317, at *6 ("Only *if* it finds the conditions in § 1677j(b)(1)(A)–(E) satisfied does it *then* . . . consider the § 1677j(b)(3) factors.") (emphasis in original)—does it turn to the question of devising a remedy "based on the available record evidence." 19 C.F.R. § 351.226(m)(1).

Here, "based on the available record evidence," the Department had only two options for the unexamined cooperating companies, neither of which Trina and FPL wanted. The agency reasonably explained why it chose the one it did. The court therefore sustains the agency's country-wide circumvention determination using the findings applicable to the uncooperative companies, insofar as those findings are reasonably explained—which the agency must attempt to do on remand.

**Ct. No. 23-00228**                                    **Page 18**

\*    \*    \*

The court grants Trina's (ECF 42) and FPL's (ECF 43) motions for judgment on the agency record. A separate remand order will issue.

Dated:  May 19, 2025            /s/ *M. Miller Baker*
        New York, NY            Judge